[Civ. No. 7076.   Third Dist.   Feb. 26, 1945.]

CHARLES KEEGAN et al., Appellants, v. KAUFMAN
BROS. (a Copartnership) et al., Respondents.

Single, Bryant, Cook & Herrington for Appellants.

Bush & Ackley for Respondents.

PEEK, J.—Plaintiffs, as partners, brought this action to recover from defendants, also a partnership, the market value of 272 heavy wether lambs. The complaint is in three counts,—the first count sought replevin of the lambs; the second count was for conversion thereof, and the third count was for money had and received. Defendants' answer controverted most of the allegations of the complaint, and as a separate defense alleged the lambs had been purchased in good faith for cash and without any notice or knowledge that any one other than their vendor claimed any interest therein. The trial court found in favor of defendants, and plaintiffs have appealed.

Prior to the trial and for the purposes thereof, the parties stipulated in writing to certain facts, all of which the trial court found to be true. Said stipulation appears in the record as plaintiffs' Exhibit I, and states in part that plaintiffs, who are residents of the State of Oregon, together with one Patrick Charles, on May 15, 1940, agreed with one Boylen, who was well and favorably known to them, to sell to him their lamb crops, delivery to be made f.o.b. railroad cars at the Umli, Oregon stock yards between September 10th and 20th. On September 20th Boylen took delivery of the lambs, and through his agent R. E. McGreer delivered to plaintiffs and Charles separate checks for the balance of the purchase price due them. The lambs delivered to Boylen were segregated and placed in different corrals. On the same day the lambs in question were purchased from Boylen by one W. J. Horan, who paid Boylen in full. The lambs so purchased by Horan were weighed, segregated and loaded on cars, and, in accordance with arrangements made that same day by Horan, were shipped to Oakdale, California. Charles and Horan were present at all times and actively assisted in such operations. Plaintiff Charles Keegan assisted only until noon of that day. None of those present expected the sheep to be held at Umli in corrals or in cars for the reason of the lack of proper facilities for handling and the resulting shrinkage which would follow. The uniform stock certificate shipping contract made out by the Southern Pacific Company designated Horan as shipper and one J. J. Sawyer as consignee. Sawyer was unable to take the sheep, and before arrival in Oakdale they were sold to defendants, who took delivery on September 23d and paid Horan in full. The shipping charges were paid by respondents. On September 25th and 16th the checks given by Boylen to Keegan and Charles were dishonored, and plaintiffs immediately instituted inquiry concerning the whereabouts of the sheep. On October 4th they were found in the possession of defendants at Oakdale. Prior to the filling of the present action Charles assigned all of his interest therein to plaintiffs.

In addition to the foregoing agreed facts, which the trial court found to be true, further evidence was adduced in support of the findings of said court that Horan purchased the lambs from Boylen in good faith for value and without notice

or knowledge that either plaintiffs or Charles had or claimed to have any right, title or interest in the lambs; that defendant purchased the lambs from Horan at Oakdale, California, on September 23, 1940, at which time neither Horan nor the defendants had any notice or knowledge that either plaintiff or Charles claimed to have any right, title or interest in the lambs, and that defendants bought the lambs in good faith and for value; that plaintiffs and said Charles were present at the time and place of the sale and delivery of the lambs from Boylen to Horan and they then and there knew the lambs were being sold and they then and there acquiesced in the sale and actively assisted in the physical operations attending the sale and delivery of the lambs from Boylen to Horan; that plaintiffs and said Charles by their acts and conduct at the time of the sale from Boylen to Horan had clothed Boylen with indicia of title to the lambs and the power to dispose of them to innocent third purchasers; that Horan and defendants are innocent third party purchasers and that plaintiffs and Charles are estopped from asserting any right, title or interest in the lambs as against Horan or defendants.

From the facts so found the trial court concluded:

(1) That plaintiffs and said Charles are estopped from asserting any right, title or interest in the lambs as against the defendants or Horan; (2) that defendants are protected by section 3543 of the Civil Code,—both Horan and defendants being bona fide purchasers for value from one who, at the time of said purchase, was, through the negligence of plaintiffs, clothed with full indicia of ownership of the lambs. Judgment was entered accordingly.

Appellants contend that the trial court erred in concluding (1) that they and Charles were negligent; (2) that appellants and Charles clothed Boylen with indicia of title to the lambs and were therefore estopped to assert their title; (3) that section 3543 of the Civil Code is applicable, and (4) as a final contention, appellants charge that respondents were negligent and therefore were not entitled to a judgment.

Whether or not plaintiffs or defendants were negligent, whether or not plaintiffs clothed Boylen with such indicia of title as to estop them from asserting their title as against defendants, and whether or not section 3543 of the Civil Code is applicable, are all questions of fact.

Under such circumstances a reviewing court is con-

cerned only with one question i. e., is the evidence as a whole when viewed in the light most favorable to the prevailing party, sufficient to warrant the conclusion reached by the trial court? The power of an appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the trial court. It will accept as true all evidence tending to establish the correctness of the findings and judgment, and where, as here, the evidence is conflicting in many details it will construe and resolve every substantial conflict as favorably as possible in support of the judgment. (*Estate of Bristol* (1943), 23 Cal.2d 221 [143 P.2d 689].)

We have previously referred to some of the facts appearing in the stipulation. In addition thereto Horan testified at the hearing that Charles put the lambs on at one end of the scales, that he (Horan) was at the other end, a distance of 10 or 12 feet away, and counted the lambs as they came off the scales; that Keegan stood at the center of the scales taking down the weights of the sheep as they were called off by an agent of the railroad company; that when wether lambs were run out to be weighed he (Horan) stated to Boylen that he desired to re-sort them; that when he so addressed Boylen, Keegan and Boylen were standing together at the center of the scales; that both Keegan and Charles assisted with the re-sorting; that these operations were made under his (Horan's) directions and instructions, and that when the lambs were loaded on the cars the loading likewise was done in accordance with his instructions. He further testified that he took no bill of sale from Boylen and that it was not customary to do so in buying or selling sheep.

Keegan, when called as a witness in his own defense, testified in response to a question by the court that he neither saw nor heard anything on the day the lambs were shipped nor did he have any knowledge that Horan was buying the lambs. Charles was also called as a witness for plaintiff and testified in response to questions asked by the court that he noticed no deals between Boylen and Horan with regard to the lambs nor did he observe or hear any conversation between Boylen or his agent and Horan regarding the latter's purchase of the sheep. Whether or not plaintiffs' heard the remark

of Horan was likewise a question of fact for the trial court. (*People* v. *Douglas* (1935), 9 Cal.App.2d 63, 65 [48 P.2d 725].)

Applying the rule previously announced in *Estate of Bristol, supra,* we find no occasion to warrant interference with the findings and conclusions of the trial court. (See *People* v. *Douglas, supra.*)

Even though it could be said that certain findings of the trial court are objectionable, nevertheless if the judgment is amply supported by findings which are not objectionable, findings upon other issues become immaterial. (2 Cal.Jur. 1028 and cases cited; see, also, *Owen* v. *Cohen* (1941), 19 Cal. 2d 147, 151 [119 P.2d 713].)

Furthermore, it is evident from the agreed facts and the provisions of section 1744 of the Civil Code, that plaintiffs and their assignor had only a right to rescind the sale to Boylen since his title to the lambs was merely voidable. However, as his title was not voided by plaintiffs prior to the sale to Horan the latter acquired good title, which the court found, upon sufficient evidence, he had purchased in good faith for value and without notice of any defect in Boylen's title, and that respondents likewise so purchased the property from Horan.

In the very similar case of *Meadows* v. *Hampton Live Stock Com. Co.* (1942), 55 Cal.App.2d 634 [131 P.2d 591], the plaintiff therein sold cattle to a livestock commission company whom the plaintiff knew to be so engaged and who would offer the stock for resale. In payment thereof he accepted drafts, stating he would not give a bill of sale until he had the money. The plaintiff was present while the cattle were being unloaded and weighed. The cattle were then sold to third persons in the usual course of the commission company's business. When the plaintiff presented the drafts for payment they were dishonored. On appeal the judgment of the trial court for the plaintiff was reversed. The reviewing court held that the defendants purchased the stock in good faith; that plaintiff by his acts "unquestionably entrusted the Hampton Company with the indicia of ownership," and concluded that "The owner of property who clothes another with the apparent title to it, or the power of disposition of it, is estopped from afterwards asserting his title against an innocent third party who has thereby been induced to deal with the apparent owner

in reference thereto. (*Wendling Lbr. Co.* v. *Glenwood Lbr. Co.*, 54 Cal.App. 691 [202 P. 929]; *Pacific Finance Corp.* v. *Hendley*, 103 Cal.App. 335 [284 P. 736].) One who stands by while property to which he has title is sold is estopped from setting up title against the purchaser. (*Snodgrass* v. *Ricketts*, 13 Cal. 359.)''

█ The third contention raised by appellants regarding the applicability of section 3543 of the Civil Code was likewise considered by the reviewing court in the Meadows case, wherein it was stated that said section ''has been applied to bona fide purchasers for value from those who have been clothed with the indicia of ownership. It has been held that although the true owner is guilty of no more than misplaced confidence, such misplaced confidence is negligence within the meaning of section 3543. (*Phelps* v. *American Mortgage Co.*, 40 Cal.App.2d 361, 366 [104 P.2d 880]; *Camerer* v. *California Sav. etc. Bank*, 4 Cal.2d 159, 172 [48 P.2d 239, 100 A.L.R. 667].)''

Appellants strongly rely upon the case of *Keegan & Donnelly* v. *Lenzie*, 171 Ore. 194 [135 P.2d 717], which was an outgrowth of the same sale by plaintiffs herein and Charles to Boylen. In that case the sheep were sold by Boylen by telephone directly to one Lenzie, a resident of the State of Washington. The Oregon courts found for plaintiffs, and it is urged by plaintiffs herein that under the rules of comity the determination of the highest court of a sister state should be followed by the courts of this state ''particularly when the same set of facts are involved in both instances.''

An examination of the opinion in the Lenzie case shows the facts therein set forth to be essentially different from those presented to the trial court herein. As in the present case, the parties therein stipulated to certain facts, which, among other things, disclose that Lenzie was not present at Umli nor did he participate in the weighing, segregating or loading, nor did he have any conversations regarding the sheep as did Horan in the instant case. His sole activity in relation to his purchase of the sheep was an acceptance of Boylen's offer by telephone to sell the same to him. The trial court therein concluded that plaintiffs in no way acted so as to clothe Boylen with indicia of title; that the conduct of plaintiffs was not such as to estop them to assert their title; that it was not the

intention of the parties that title should pass but that it was reserved in plaintiffs until Boylen's drafts had been honored. The effect of the opinion in that case (p. 722 [135 P.2d]) was the same as the conclusion we have reached herein, namely, that there was sufficient evidence to support the findings of the trial court.

As we have previously concluded that the findings of the trial court are supported by substantial evidence, we find no merit in appellants' request to this court, under rule number 23(a) of the Rules on Appeal, to adopt certain proposed findings superseding those made by the trial court.

The judgment is affirmed.

Adams, P. J., and Thompson, J., concurred.