[Civ. No. 26877. Second Dist., Div. Two. Nov. 12, 1963.]

MELVILLE S. MILLER et al., Plaintiffs and Appellants, v. ERNEST J. WOOD et al., Defendants and Respondents.

Loveless, Schauer & Clarke and Alan I. Epstein for Plaintiffs and Appellants.

Frank S. Whiting and John Whyte for Defendants and Respondents.

FOX, P. J.—Plaintiffs, the purchasers under a land sale contract, sought to rescind the agreement, or in the alternative to recover damages from defendants Wood, the sellers, and defendant Beck, a real estate broker. In a previous appeal judgments for the Woods against the plaintiffs, and for plaintiffs against Beck were reversed. (*Miller* v. *Wood*, 188 Cal.App.2d 711 [10 Cal.Rptr. 770].)

The circumstances surrounding the transaction, as determined from the record, appear to be as follows: Beck was a real estate broker known to the plaintiffs. On June 25, 1958, he approached them regarding the purchase of a parcel of land owned by the Woods. Beck told the plaintiffs that he

thought the Woods would sell for $55,000, and made misrepresentations of fact concerning the land which amounted to fraud. Plaintiffs, relying on these fraudulent statements, signed a deposit receipt for the purchase of the land almost immediately. Beck then took the deposit receipt to the Woods who, unaware of the fraud practiced on plaintiffs, agreed to sell.

A 30-day escrow was opened on June 26. Plaintiffs paid $7,000 into escrow as a down payment on the purchase price. Of this amount Beck received $5,500 from the escrow as his commission, pursuant to instructions from the Woods. On July 30, after the close of escrow, plaintiffs notified the Woods of their election to rescind on the grounds of Beck's fraud.[1]

After the reversal a retrial of the action for rescission resulted in a finding by the trial court that at the time the agreement was signed Beck was neither the agent, servant, nor employee of the Woods with reference to the sale of the property, nor was he expressly or impliedly authorized to make any representations regarding the property. In spite of this finding, however, judgment was entered cancelling all documents evidencing plaintiffs' indebtedness for the purchase price. Plaintiffs were also awarded $566.95 damages from the Woods, and $6,860.50 general damges and $7,500 exemplary damages from Beck. The Woods were awarded costs from plaintiffs. By *nunc pro tunc* order, about four months later, the judgment was amended to provide for the return of title to the Woods. Plaintiffs now appeal upon the judgment roll from the whole of the judgment, seeking additional relief.

It is not apparent on what grounds the trial court granted rescission, although it was the relief sought by the plaintiffs. Defendants argue in their brief that no rescission was justified, but since they do not appeal from the judgment, it is not necessary to consider the argument. (*Richardson* v. *Suiter*, 74 Cal.App.2d 682, 688 [169 P.2d 252]; *Hill* v. *Hill*, 82 Cal.App.2d 682, 702 [187 P.2d 28].)

The principal problem, of course, is to determine, as between two innocent parties, who should bear the loss suffered by reason of Beck's fraud and apparent inability to restore the money he received as a commission. Plaintiffs contend that when rescission is granted the rescinding party should

---

[1] At the time of trial Beck was serving a term in the California Penitentiary.

have restored to him any value parted with in order to effect the status quo as it existed before the agreement. It is obvious here, however, that complete status quo cannot be attained. One of the parties must suffer the loss of the money retained by Beck in the event a judgment against him is valueless.

██ Where one of two innocent parties must suffer because of the fraud of a third, the loss must be borne by the person whose negligence or misplaced confidence made the injury possible. (*Poorman* v. *Mills & Co.*, 39 Cal. 345 [2 Am.St.Rep. 451]; *Asp* v. *Lowry*, 117 Cal.App.2d 81, 85 [254 P.2d 967]; 18 Cal.Jur.2d, Equity, § 32; Civ. Code, §3543.) ██ In the present appeal the record supports the conclusion that, as between the buyers and sellers, the plaintiffs were initially responsible for causing the loss.

The plaintiffs first misplaced their confidence in Beck. By signing the deposit receipt and agreeing to buy the land on Beck's representations they conferred upon him the authority to take the offer to the Woods to be accepted.[2] The Woods' decision to sell does not alter the fact that it was the plaintiffs who set in motion the chain of events resulting in the loss by making Beck their agent to handle the transaction. As was said in *Schultz* v. *McLean*, 93 Cal. 329, 357 [28 P. 1053], "In this case, plaintiffs and defendant were both innocent. Neither knew that the fraud was being practiced; but if that fraud was productive of injury, the injury must result to the plaintiffs, for they placed it in the power of the wrong-doer to perpetrate the fraud."

The trial court, in the exercise of its equitable discretion, apparently considered the foregoing principles in arriving at a decision it considered fair to all parties. An attempt was made to approach the status quo as nearly as possible, with the transaction being effectively cancelled. The judgment for damages awarded to plaintiffs from the Woods appears to be an attempt to prevent the Woods from being unjustly enriched by the rescission.[3] The judgment for plaintiffs against

[2]The finding of the trial court states: "After looking at the property and having further conversation with Beck, Millers on June 25, 1958, signed a deposit receipt. The deposit receipt recited terms and conditions of sale with the further provision that 'property is sold subject to approval of owner and this offer is effective until ———— to enable agent herein to procure owner's approval ... ' "

[3]The order correcting the judgment *nunc pro tunc* directs, *inter alia*, that defendants Wood "*restore* to plaintiffs the sum of $566.95." (Italics added.)

Beck will, at least theoretically, make them whole. If, as a practical matter, the judgment against Beck is worthless, it is not unreasonable under the circumstances that plaintiffs bear the loss rather than the Woods.

Plaintiffs have devoted part of their briefs to the contention that Beck was the Woods' agent, and that therefore his fraud is chargeable to them. The trial court expressly found, however, that no agency relationship existed between Beck and the Woods at the time of the transaction. On a judgment roll appeal, such as we have here, it is presumed that the trial court received evidence to support its findings. (*White* v. *Jones*, 136 Cal.App.2d 567, 571 [288 P.2d 913].)

It is also argued by plaintiffs that the Woods ratified Beck's fraudulent conduct by accepting and retaining the benefits derived from the transaction. To support such a theory, however, it must be shown that the Woods had full knowledge of all of the material facts involved in the transaction at the time of the purported ratification. (*Chastain* v. *Belmont*, 43 Cal.2d 45, 58 [271 P.2d 498]; *Bate* v. *Marsteller*, 175 Cal.App.2d 573, 582 [346 P.2d 903].) No such showing is made in the record, nor does it appear that the Woods were in any way negligent in failing to discover Beck's fraud.

Plaintiffs contend that the commission of $5,500 was paid by the Woods out of money received by them for their benefit, and that since they chose this method of discharging an obligation of their own they should bear the loss. Actually, however, no commission was owed to Beck by the Woods because he had not procured an enforceable contract for them. Since no obligation was in fact owed to Beck, the money which he was paid cannot be said to have benefited the Woods. At the time the commission was paid, however, the Woods had no knowledge of Beck's fraud, nor did they know that an effective sale had not been made. Therefore they had no reason to know or even suspect that they did not owe him a commission.

Finally, plaintiffs contend that the court had no jurisdiction to correct the judgment *nunc pro tunc* to provide for cancellation of the deed conveying title to them and requiring them to reconvey the property by quitclaim deed.

The rule is that a court may correct a "clerical" mistake in the judgment, but not a judicial error. (Code Civ. Proc., § 473.) Clerical mistakes include omissions or errors that result from inadvertence. (*Makovsky* v. *Makovsky*, 158 Cal.App.2d 738 [323 P.2d 562].) In the instant case

the trial judge stated in the *nunc pro tunc* order that the original judgment "through inadvertence failed to set forth the decision of the Court as announced at the time of rendering judgment herein. . . ." It is primarily for the trial judge to determine whether the judgment as written expressed his decision, and in reviewing the *nunc pro tunc* order his determination is entitled to substantial consideration. (*Minardi* v. *Collopy*, 49 Cal.2d 348, 352 [316 P.2d 952] ; *Brown* v. *Brown*, 162 Cal.App.2d 314, 318 [328 P.2d 4].)

 The court was trying, as far as possible, to return the parties to the status quo existing before the agreement. Certainly it was only through inadvertence that the original judgment failed to restore title to the property to the Woods. A contrary inference would require us to believe that the court intended to cancel all evidence of indebtedness for the purchase price while leaving title to the property in the plaintiffs. Such a result would be manifestly unjust, and we cannot presume that the court so intended.

The judgment is affirmed.

Herndon, J., concurred.