[No. B086490. Second Dist., Div. Four. July 2, 1996.]

ROGER WURZL et al., Plaintiffs and Appellants, v.
FANNIE HOLLOWAY et al., Defendants and Respondents.

## Counsel

David M. Danny for Plaintiffs and Appellants.

Lim & Kim, Christopher Kim and John J. Aumer for Defendants and Respondents.

## Opinion

**HASTINGS, J.**—This is an appeal by Roger Wurzl and Cora V. Wurzl, Trustees of the Roger E. Wurzl and Cora V. Wurzl Trust (collectively referred to as appellants), from a judgment denying quiet title to appellants and in favor of respondent Federal Deposit Insurance Corporation (FDIC). The trial court found that appellants and the FDIC were each innocent victims of fraud perpetrated by defendant Fannie Holloway and concluded that appellants' action for quiet title against the FDIC was barred by the doctrine enunciated in *D'Oench, Duhme & Co. v. F. D. I. C.* (1942) 315 U.S. 447 [86 L.Ed. 956, 62 S.Ct. 676] as well as 12 United States Code section 1823(e) (hereafter, section 1823). In addition, the court found that as between the two innocent parties, appellants had the better chance of preventing the loss as contemplated in Civil Code section 3543. We affirm.

### Facts

The Roger E. Wurzl and Cora V. Wurzl Trust owned real property located at 1243 Vista Court, Glendale, California. On July 8, 1990, appellants, as trustees, listed the property for sale through John Telfezian of Century 21—Christopher & Associates.

Defendant Fannie Holloway (Holloway) made an offer to buy the property on July 30, and appellants made a counteroffer on August 4, 1990, which

was accepted (The Wurzl-Holloway sale). The sale price was $250,000. Appellants agreed to finance $187,500 of the sale price upon receipt of a promissory note in that amount secured by a deed of trust. The remaining amount, $62,500, was to be paid in cash. The agreement also provided that Holloway would choose the escrow agent for the transaction. Appellant Roger Wurzl initially objected to this last provision and questioned his brokers about it. After his brokers advised him that this provision was not a problem, he agreed.

Holloway selected Apple Escrow, and on August 9, 1990, escrow was opened. Pursuant to the terms of escrow, appellants authorized the escrow holder to "use" appellants' grant deed conveying title to Holloway when the down payment of $62,500 and the promissory note and deed of trust representing the remaining $187,500 were deposited into escrow.

The pertinent terms of the escrow agreement signed by appellants are as follows: "BUYER will deliver to you any instruments and/or funds required from Buyer to enable you to comply with these instructions, all of which you are authorized to use and/or deliver on or before August 20, 1990, and when you are in a position to obtain a OWNERS Policy of Title Insurance from Gateway Title, provided that said policy has a liability of at least the amount of the above total consideration, (new title policy to be delivered to lien holder), covering the following described property in the County of Los Angeles, State of California."

Roger Wurzl did not believe that the escrow was going smoothly. He asked his son Tom, who earned his living buying and selling real property, to attend a meeting with the brokers to discuss the problems he perceived. Tom also felt that there were problems with the escrow, complaining about preparation of the documents. Roger became upset and advised the brokers to cancel the escrow. However, after the brokers assured Roger that Apple Escrow was a bona fide escrow company, licensed and bonded, an agreement was reached whereby the escrow documents would be sent to Tom to review prior to close of escrow. Roger agreed to allow the closing to go forward. The documents were never sent to Tom for his review.

Unknown to appellants, Holloway set up a sham escrow on the same property, specifically to defraud appellants of title to the property. Holloway, with the aid of Michael Devaughn and Amy Martin, presented the falsified escrow documents to Mission Viejo National Bank (MVNB) to obtain financing for a first trust deed of $143,000 and a second trust deed of $25,000. MVNB, unaware that this was a fraudulent escrow, agreed to loan the money and did so. Checks were issued to Holloway, in another name,

and deposited into an account at a bank in San Pedro. On September 12, 1990, this second escrow closed, simultaneous with the Wurzl-Holloway escrow. MVNB received and recorded the first and second trust deeds. Appellants received their down payment, less costs and brokers' fees, but they never received the promissory note or the trust deed. MVNB had no knowledge of the first escrow for the Wurzl-Holloway transaction.

On October 26, 1990, appellants filed this suit, which included a claim for quiet title against MVNB, the sixth cause of action. On February 28, 1992, the Comptroller of the Currency declared MVNB insolvent, ordered it closed, and tendered to the FDIC an appointment of receivership, which was accepted. The FDIC succeeded to all the rights, title, powers and privileges of MVNB, including those subject to appellant's claim. On November 24, 1993, the FDIC was substituted into the action in place of MVNB.

On November 29, 1993, the FDIC filed its first amended answer. In the third affirmative defense FDIC states: "The Complaint is barred by *D'Oench, Duhme & Co.* v. *FDIC* (1942) 315 U.S. 447 [86 L.Ed. 956, 62 S.Ct. 676] and its progeny." The fourth affirmative defense alleges that the complaint is barred by section 1823. The ninth affirmative defense pled that "[p]laintiffs' cause of action is barred by the doctrine of estoppel." The 10th and 11th affirmative defenses alleged that it was appellants' negligence which caused the damages of which appellants complained.

After a court trial, a statement of decision was issued which determined that the *D'Oench* doctrine followed in *Walsh* v. *New West Federal Savings & Loan Assn.* (1991) 234 Cal.App.3d 1539 [1 Cal.Rptr.2d 35], and section 1823 barred appellants' claim against FDIC. The court also rejected appellants' argument that there was no delivery of the deed from appellants to Holloway, instead, finding that delivery of the deed was procured by fraud in the inducement, citing *Langley* v. *FDIC* (1987) 484 U.S. 86 [98 L.Ed.2d 340, 108 S.Ct. 396] for the proposition that fraud in the inducement does not prevent application of the *D'Oench* doctrine or section 1823. The court also applied Civil Code section 3543, finding that "as between [appellants] and [MVNB], [appellants] had the better chance of preventing loss through its escrow agents." Judgment was ordered entered in favor of the FDIC.

On June 9, 1994, judgment was entered and this appeal followed.

## DISCUSSION

On appeal, appellants urge that the court erred in applying the *D'Oench* doctrine and section 1823. They also argue that the court erred by concluding that the deed was in fact delivered to Holloway, contending that the

terms of escrow were not complied with, meaning transfer of the deed to Holloway was void, not voidable as concluded by the trial court. The FDIC argues in its respondent's brief that the facts of this case do fit easily within both theories relied upon by the court and that the court properly found that the fraud involved was fraud in the inducement. In addition, the FDIC urges an additional ground for affirmance, not addressed by appellants in their opening brief; that even if we determine neither *D'Oench* nor section 1823 apply, the trial court found in favor of the FDIC pursuant to Civil Code section 3543, that as between two innocent victims appellants should suffer the loss.

*D'Oench and section 1823(e)*

The *D'Oench* doctrine and section 1823 are each extensively discussed and applied in *Walsh* v. *New West Federal Savings & Loan Assn.*, *supra*, 234 Cal.App.3d 1539, a case similar to this. The decision begins by discussing the development and application of the doctrine.

■ "The *D'Oench Duhme* doctrine, an equitable rule of estoppel, emanates from the United States Supreme Court decision in *D'Oench, Duhme & Co.* v. *F. D. I. C.*, *supra*, 315 U.S. 447. In *D'Oench Duhme*, the Federal Deposit Insurance Corporation (FDIC) sued on a promissory note which had been assigned to it in connection with a bank failure. In defense, the obligors alleged the bank had orally agreed it would not call the note for payment. Rejecting the defense, the Supreme Court held an obligor who 'lent himself to a scheme or arrangement' that was 'likely to . . . mislead' bank examiners may not assert against the FDIC any part of an agreement that might diminish the value of his written loan obligation. (*Id.* at p. 460 [86 L.Ed.2d at pp. 963-964].) The Supreme Court based its ruling on a 'federal policy . . . to protect [the FDIC], . . . from misrepresentations made to induce or influence [its] action[s], including misstatements as to the genuineness or integrity of securities in the portfolios of banks which it insures or to which it makes loans.' (*Id.* at p. 459 [86 L.Ed.2d at p. 963].) Congress thereafter codified the doctrine at 12 United States Code section 1823(e). . . .

"Since its inception, courts have dramatically expanded the reach of the common law doctrine and its statutory counterpart. (*Beighley* v. *Federal Deposit Ins. Corp.* [5th Cir. 1989] 868 F.2d [776] at p. 784; *Bowen* v. *Federal Deposit Ins. Corp.* (5th Cir. 1990) 915 F.2d 1013, 1015.) 'The doctrine has been expanded to encompass *any* claim against an insolvent institution that would either diminish the value of the assets held by the FSLIC or increase the liabilities of the insolvent institution.' (*Castleglen*,

*Inc.* v. *Commonwealth Sav. Ass'n* (D. Utah 1989) 728 F.Supp. 656, 671, citing *First State Bank* v. *City and County Bank* (6th Cir. 1989) 872 F.2d 707, 716-717.) The doctrine applies, for example, not only to defensive use of alleged oral promises (such as in the original *D'Oench Duhme* case), but also to offensive use, such as fraud or breach of contract claims based upon alleged oral agreements. (*Beighley* v. *Federal Deposit Ins. Corp., supra,* 868 F.2d at pp. 783-785; *Webb* v. *Superior Court* [1990] 225 Cal.App.3d 990 [275 Cal.Rptr. 581].) Courts hold the defense applies, moreover, even where the party asserting an oral agreement was innocent of any wrongdoing. The relevant question is not whether the oral 'agreement was itself fraudulent or whether the borrower intended to deceive banking authorities, but rather whether the borrower "lent himself to a scheme or arrangement" whereby [the] authorities were likely to be misled.' (*Bell & Murphy & Assoc.* v. *Interfirst Bank Gateway* (5th Cir. 1990) 894 F.2d 750, 753-754.)

■ "As the Supreme Court recently explained, a primary purpose of the doctrine 'is to allow federal and state bank examiners to rely on a bank's records in evaluating the worth of the bank's assets.' (*Langley* v. *FDIC* (1987) 484 U.S. 86, 91 [98 L.Ed.2d 340, 347, 108 S.Ct. 396].) Such evaluations must frequently 'be made "with great speed, usually overnight, in order to preserve the going concern value of the failed bank and avoid an interruption in banking services." *Gunter* v. *Hutcheson* [11th Cir. 1982] 674 F.2d [862] at 865.' (*Ibid.*) The doctrine also seeks to 'ensure mature consideration of unusual loan transactions by senior bank officials, and prevent fraudulent insertion of new terms, with the collusion of bank employees, when a bank appears headed for failure.' (*Id.* at p. 92 [98 L.Ed.2d at p. 347].) Thus, ' "[t]he doctrine encourages debtors to memorialize all agreements in writing *and reflects the equitable principle that losses incurred as a result of unrecorded arrangements should not fall on deposit insurers, depositors, or creditors but rather upon the person who could have best avoided the loss." '* (*Webb* v. *Superior Court, supra,* 225 Cal.App.3d at p. 995, quoting *Fair* v. *NCNB Texas Nat. Bank* (N.D.Tex. 1990) 733 F.Supp. 1099, 1103.)" (*Walsh* v. *New West Federal Savings & Loan Assn., supra,* 234 Cal.App.3d at pp. 1543-1544, italics added, fns. omitted.)

■ Appellants urge that the nature of the transaction involved here is not the traditional "lender/borrower" transaction to which either the *D'Oench* doctrine or section 1823 would apply. This same argument was made and rejected in *Walsh*: "Admittedly this case does not fit within the usual pattern into which a *D'Oench Duhme* defense is generally asserted. The Walshes do not allege a borrower/lender relationship between themselves and State Savings. Moreover, the focus of their action is not the enforceability of a promissory note to which they made a contemporaneous oral agreement.

Nonetheless, mindful of the federal court's expansive interpretations of the doctrine and consistent with the authorities cited above, we conclude this case comes within the *D'Oench Duhme* doctrine because (1) the Walshes are attempting to enforce an oral agreement (their property exchange agreement with Gallegos) and/or to recover for oral misrepresentations made by Gallegos in connection with that agreement (2) which would reduce the value of assets formerly held by State Savings." (*Walsh* v. *New West Federal Savings & Loan Assn., supra*, 234 Cal.App.3d at p. 1545.) We agree with *Walsh* that a traditional lender/borrower relationship is not necessary to apply the doctrine.

Appellants also argue that they have no agreement with MVNB which would trigger application of either theory. This argument was also rejected in *Walsh*: "The Walshes counter the doctrine is inapplicable because there was never any agreement or relationship between them *and State Savings.* We agree the *D'Oench Duhme* doctrine generally bars enforcement of obligations only when those obligations arise from an *agreement*, as the term has been broadly construed by the courts (see *Langley* v. *FDIC, supra*, 484 U.S., at pp. 90-92 [98 L.Ed.2d at pp. 346-348]) and the Walshes had no direct relationship with New West. *A direct relationship, however, is not an essential prerequisite to the applicability of the defense.* (See *Chatham Ventures, Inc.* v. *Federal Deposit Ins. Corp.* (5th Cir. 1981) 651 F.2d 355, 360-361; see also *Federal Deposit Ins. Corp.* v. *Dixon* (E.D.Mich. 1988) 681 F.Supp. 408 [holding defense applied even though misrepresentations were made by third party and not by bank].)" (*Walsh* v. *New West Federal Savings & Loan Assn., supra*, 234 Cal.App.3d at p. 1545, italics added; see also *Adams* v. *Madison Realty Development, Inc.* (3d Cir. 1991) 937 F.2d 845, 858.)

Appellants also argue that their suit existed against MVNB prior to the time that FDIC took over the bank and therefore FDIC would have had knowledge of the claim. This same argument was also rejected in *Walsh*, relying on *Langley* v. *FDIC, supra*, 484 U.S. 86: "Alternatively, the Walshes say the doctrine is inapplicable because their claims were of public record when the FSLIC was appointed receiver. The United State Supreme Court recently rejected a similar argument, holding the federal regulators' knowledge of a plaintiff's claim at the time of the receivership is irrelevant to the application of the *D'Oench Duhme* doctrine. [Citing *Langley*.] Following *Langley*, the courts have 'uniformly rejected' the argument that *D'Oench* is inapplicable when plaintiff's suit was on file at the time of a receivership. [Citations.]" (*Walsh* v. *New West Federal Savings & Loan Assn., supra*, 234 Cal.App.3d at p. 1546.)

■ Finally, appellants urge that there was no delivery of the deed to Holloway because the terms of escrow were not met regarding title insurance, resulting in a void transfer to the FDIC so that neither the *D'Oench*

doctrine nor section 1823 would apply. The same concept of void versus voidable transfer was raised in *Langley* v. *FDIC, supra,* 484 U.S. 86. The court found that delivery resulting from fraud in the inducement did not prevent application of the doctrine or section 1823: "Respondent conceded at oral argument that the real defense of fraud in the factum—that is, the sort of fraud that procures a party's signature to an instrument without knowledge of its true nature or contents . . . —would take the instrument out of § 1823(e), because it would render the instrument entirely void, see Restatement (Second) of Contracts § 163 and Comments a, c; Farnsworth § 4.10, at 235, thus leaving no 'right, title or interest' that could be 'diminish[ed] or defeat[ed].' . . . Petitioners have never contended, however, nor could they have successfully, that the alleged misrepresentations about acreage or mineral interests constituted fraud in the factum. It is clear that they would constitute only fraud in the inducement, which renders the note voidable but not void. See U.C.C. § 3-201(1), 2 U.L.A. 127; Restatement (Second) of Contracts § 163, Comment c; Farnsworth § 4.10, at 235-236. The bank therefore had and could transfer to the FDIC voidable title, which is enough to constitute 'title or interest' in the note. This conclusion is not only textually compelled, but produces the only result in accord with the purposes of the statute. If voidable title were not an 'interest' under § 1823(e), the FDIC would be subject not only to undisclosed fraud defenses but also to a wide range of other undisclosed defenses that make a contract voidable, such as certain kinds of mistakes and innocent but material misrepresentations. See Restatement (Second) of Contracts §§ 152-153, 164." (*Langley* v. *FDIC, supra,* 484 U.S. at pp. 93-94 [98 L.Ed.2d at pp. 348-349].)

While appellants do not rely on fraud in the factum, but claim invalid delivery because of failure to comply with the escrow instructions, we see no difference in application. The uncontradicted evidence is that Holloway obtained the deed from appellants by fraud in the inducement: "In the usual case of fraud, where the promisor knows what he is signing his consent is *induced* by fraud, mutual assent is present and a contract is formed, which, by reason of the fraud, is *voidable.*" (1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 403, p. 363, italics in original.)

We conclude, as did the court in *Langley,* that there was a voidable delivery to Holloway. The fraud perpetrated was the secret intent of Holloway to use the deed from appellants to establish the second escrow and not complete the sales transactions with appellants. There was no requirement in the escrow instructions that before the deed could be "used" that escrow obtain title insurance, only that escrow was "in a position to obtain" such insurance. Otherwise, the terms had been met. The down payment, the promissory note and deed of trust had all been placed in escrow.

*Civil Code section 3543*

██ At this point it is germane to requote from *Walsh* with regard to the application of the *D'Oench* doctrine—and section 1823: "Thus, ' "[t]he doctrine reflects the equitable principle that losses incurred as a result of unrecorded arrangements should not fall on deposit insurers, depositors, or creditors *but rather upon the person who could have best avoided the loss.*" ' (*Webb* v. *Superior Court, supra*, 225 Cal.App.3d at p. 995, quoting *Fair* v. *NCNB Texas Nat. Bank* (N.D.Tex. 1990) 733 F.Supp. 1099, 1103.)" (*Walsh* v. *New West Federal Savings & Loan Assn., supra*, 234 Cal.App.3d at p. 1544.)

In the statement of decision the court made the following finding: "[Appellants] had the better chance of preventing the loss through its escrow agents." This was in connection with application of Civil Code section 3543. That section states as follows: "Where one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer." This finding ties in perfectly with the concept of the *D'Oench* doctrine and section 1823, and would also support the decision of the court even in the absence of those theories.

██ The concept of Civil Code section 3543 is basically an estoppel theory, addressing comparative fault between two innocent victims. It is based upon misplaced confidence by one victim resulting in victimization of the other: "Misplaced confidence has been held to be negligence within section 3543 and has resulted in the estoppel of a true owner from asserting title against an innocent party. [Citations.]" (*Reusche* v. *California Pac. Title Ins. Co.* (1965) 231 Cal.App.2d 731, 738 [42 Cal.Rptr. 262].) "[S]ection 3543 . . . 'has been applied to bona fide purchasers for value from those who have been clothed with the indicia of ownership. It has been held that although the true owner is guilty of no more than misplaced confidence, such misplaced confidence is negligence within the meaning of section 3543. (*Phelps* v. *American Mortgage Co.* [1940] 40 Cal.App.2d 361, 366 [104 P.2d 880]; *Camerer* v. *California Sav. etc. Bank* [1935] 4 Cal.2d 159, 172 [48 P.2d 39, 100 A.L.R. 667].)' " (*Keegan* v. *Kaufman Bros.* (1945) 68 Cal.App.2d 197, 203 [156 P.2d 261].)

██ In *Reusche, supra*, the Court of Appeal reversed a grant of new trial and affirmed an original judgment in favor of appellants, the title insurance company and its insureds, who received a forged promissory note and deed of trust from an agent of respondent, the owner of the property subject to the

deed of trust. Appellants and respondent were each defrauded by the actions of the agent. The Court of Appeal applied Civil Code section 3543 against respondent: "Here, respondent's conduct in writing a letter to the bank approving the check which she knew had actually been forged without further inquiry of the lender or title company constituted misplaced confidence in her agent . . . and was negligent conduct of inducement, justifying the application of estoppel. [Citation.]" (*Reusche* v. *California Pac. Title Ins. Co., supra*, 231 Cal.App.2d at pp. 738-739.)

In *Miller* v. *Wood* (1963) 222 Cal.App.2d 206 [35 Cal.Rptr. 49], the issue again dealt with two innocent parties: the Millers were purchasers of real property and the Woods were sellers of the property. The agent of the Millers, defendant Beck, suggested the Millers purchase the property owned by the Woods. In connection with this pitch, he fraudulently represented the nature of the property. The Millers agreed that Beck should inquire to see if Woods would sell the property to them. Beck approached the Woods who, unaware of the fraud practiced on the Millers, agreed to sell the property. The Millers placed $7,000 into escrow, $5,500 of which was kept by Beck. After the escrow closed, the Millers learned of the fraud and gave notice of rescission. The Court of Appeal noted: "The principal problem, of course, is to determine, as between two innocent parties, who should bear the loss suffered by reason of Beck's fraud and apparent inability to restore the money he received as a commission. . . . One of the parties must suffer the loss of the money retained by Beck in the event a judgment against him is valueless. [¶] Where one of two innocent parties must suffer because of the fraud of a third, the loss must be borne by the person whose negligence or misplaced confidence made the injury possible. (*Poorman* v. *Mills & Co.* [1870] 39 Cal. 345. . . ; *Asp* v. *Lowry* [1953] 117 Cal.App.2d 81, 85 [254 P.2d 967]; . . . Civ. Code, § 3543.) In the present appeal the record supports the conclusion that, as between the buyers and sellers, the [Millers] were initially responsible for causing the loss. [¶] The [Millers] first misplaced their confidence in Beck. By signing the deposit receipt and agreeing to buy the land on Beck's representations they conferred upon him the authority to take the offer to the Woods to be accepted. The Woods' decision to sell does not alter the fact that it was the [Millers] who set in motion the chain of events resulting in the loss by making Beck their agent to handle the transaction." (*Id.* at pp. 208-209, fn. omitted.) The court affirmed the judgment preventing recovery from the Millers against the Woods. (*Id.* at p. 211.)

 Estoppel based upon Civil Code section 3543 is factually established and appellate review is limited to a determination of whether substantial evidence supports the finding: "Whether or not plaintiffs or defendants were

negligent, . . . and whether or not section 3543 of the Civil Code is applicable, are [each] questions of fact. [¶] Under such circumstances a reviewing court is concerned only with one question i.e., is the evidence as a whole when viewed in the light most favorable to the prevailing party, sufficient to warrant the conclusion reached by the trial court? The power of an appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the trial court. It will accept as true all evidence tending to establish the correctness of the findings and judgment, and where, as here, the evidence is conflicting in many details it will construe and resolve every substantial conflict as favorably as possible in support of the judgment. [Citation.]" (*Keegan* v. *Kaufman Bros., supra*, 68 Cal.App.2d at pp. 200-201.)

■ Our review of the record establishes that substantial evidence supports the trial court findings. Appellants acquiesced in the use of Apple Escrow as the escrow agent for the Wurzl-Holloway transaction, thereby making Apple Escrow their agent. (4 Witkin, Summary of Cal. Law, *supra*, Real Property, § 183, p. 391.) It is true it was against the wishes of Roger Wurzl, but that fact merely compounds appellants' responsibility. Because of his concern about the escrow, Roger called in his son, and the two of them met with their broker to discuss the situation. He advised the brokers to cancel the escrow, but the brokers convinced Roger not to do so, insisting that Apple was a licensed and bonded escrow agent. Instead Roger worked out an arrangement whereby the documents were to be sent to Tom for his review prior to closing. That never occurred. Thus, appellants misplaced their reliance not only on Apple Escrow but also on their own brokers. Of course, MVNB had no knowledge of the Wurzl-Holloway transaction and was not directly involved as a participant in the second escrow held at Apple Escrow.

*The statement of decision*

■ Appellants did not challenge the findings of the trial court relating to Civil Code section 3543 in their opening brief on appeal.[1] The FDIC raised this issue in its respondent's brief as an alternative ground to support the judgment in case we determined that the trial court erred in relying upon

---

[1]"A point not presented in a party's opening brief is deemed to have been abandoned or waived. (*Electronic Equipment Express, Inc.* v. *Donald H. Seiler & Co.* (1981) 122 Cal.App.3d 834, 858-859, fn. 13 [176 Cal.Rptr. 239]; *Henderson* v. *Security Nat. Bank* (1977) 72 Cal.App.3d 764, 769 [140 Cal.Rptr. 388].)" (*Humes* v. *MarGil Ventures, Inc.* (1985) 174 Cal.App.3d 486, 493 [220 Cal.Rptr. 186].)

*D'Oench* and section 1823. In their reply brief, appellants do not challenge the substance of the Civil Code section 3543 finding. Instead, appellants contend that the record supports no such finding, referencing the oral findings of the court in the reporter's transcript. The argument is stated as follows: "After a series of inquiries by appellants' counsel regarding the exact nature of the court's findings and legal conclusions, the court ultimately stated that it was not going to 'sit in deposition,' offered a written statement of decision and ordered the respondents to prepare the same. This, of course, gave a green light to respondents to include all kinds of extraneous and irrelevant matter in the proposed statement of decision that were not relied upon by the court, were outside the scope of the limited 402-405 hearing, and not subject to proof. Notwithstanding appellants' numerous objections to the proposed statement of decision and requests for clarifications, the court signed the proposed statement of decision without modification. [¶] The statement of decision contains assertions that are directly contrary to the specific findings made by the court as reflected in the reporter's transcript. In that regard, the court made no findings or rulings as to the following: [¶] 1. That, pursuant to Civil Code section 3543, that as between appellants and respondents, appellants had a better chance of preventing the loss through misplaced reliance on their escrow agents; [¶] 2. That as between two innocent parties, appellants should be responsible for the loss; and [¶] 3. That appellants' were negligent or estopped."

In a court trial, either party may orally request a statement of decision prior to the time that the matter is submitted to the court. (Code Civ. Proc., § 632.) Appellants did so in this case. The procedure for issuing a statement of decision is set forth in California Rules of Court, rule 232, which states, in part: "(a) On the trial of a question of fact by the court, the court shall announce its tentative decision by an oral statement, entered in the minutes, or by a written statement filed with the clerk. . . . [¶] The tentative decision shall not constitute a judgment *and shall not be binding on the court.* . . . [¶] (b) Any proposals as to the content of the statement of decision shall be made within 10 days of the date of request for a statement of decision. [¶] (c) If a statement of decision is requested, the court shall, within 15 days after the expiration of the time for proposals as to the content of the statement of decision, prepare and mail a proposed statement of decision and a proposed judgment to all parties who appeared at the trial, unless the court has designated a party to prepare the statement as provided by subdivision (a). . . . A party who has been designated or notified to prepare the statement shall within 15 days after the expiration of the time for filing proposals as to the content of the statement, or within 15 days after notice, whichever is later, prepare, serve and submit to the court a proposed statement of decision and a proposed judgment. . . . [¶] (d) Any party

affected by the judgment may, within 15 days after the proposed statement of decision and judgment have been served, serve and file objections to the proposed statement of decision or judgment. [¶] . . . [¶] (f) The court may order a hearing on proposals or objections to a proposed statement of decision. . . ." (Italics added.)

In accord with Code of Civil Procedure section 632 and California Rules of Court, rule 232, the trial court announced its tentative decision orally from the bench. However, as noted, appellants requested a statement of decision, and the trial court ordered the FDIC's counsel to prepare it. On May 18, 1994, appellants filed a document titled "Objections and Proposals to [proposed] Statement of Decision [C.C.P. § 632]." In the objections the following was stated with regard to Civil Code section 3543: "The proposed statement with respect to Civil Code section 3543 was not relied upon by the court, and is expressly contrary to the court's finding that plaintiffs were not negligent in connection with the selection and/or retention of Apple Escrow." There is no indication that the court entertained a hearing on the objections, although a hearing on the objections is within the discretion of the court.

■ "The fact that the trial court has issued a statement of intended decision does not satisfy the statutory requirement of section 632: ' "[A] court is not bound by its statement of intended decision and may enter a wholly different judgment than that announced." [Citation.] "Neither an oral expression nor a written opinion can restrict the power of the judge to declare his [or her] final conclusion in his [or her] findings of fact and conclusions of law. [Citation.] The findings and conclusions constitute the final decision of the court and an oral or written opinion cannot be resorted to for the purpose of *impeaching* or gainsaying the findings and *judgment*. [Citation.]" . . . [¶] A statement of decision allows the trial court to review its memorandum of intended decision and "to make . . . corrections, additions, or deletions it deems necessary or appropriate." [Citation.] Such statement thus enables a reviewing court "to determine what [law] the trial court employed. . . ." [Citation.] It is the statement of decision which allows the court to place upon *the record* its view of facts and law of the case. [Citation.]' (*In re Marriage of Ditto* (1988) 206 Cal.App.3d 643, 646-647 [253 Cal.Rptr. 770].)" (*Raville* v. *Singh* (1994) 25 Cal.App.4th 1127, 1132 [31 Cal.Rptr.2d 58].)

■ Thus, the fact that the court failed to mention Civil Code section 3543 in its oral statement of tentative decision did not preclude the court from considering the issue and including the finding in the statement of decision.

## Disposition

The judgment is affirmed.

Vogel (C. S.), P. J., and Baron, J., concurred.

A petition for a rehearing was denied July 22, 1996.