Filed 12/22/20  In re C.M. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re C.M. et al., Persons Coming Under the Juvenile Court Law. | B305114 (Los Angeles County Super. Ct. No. 19LJJP00878A-E) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. TIFFANY S., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County.  Steven E. Ipson, Judge Pro Tempore.  Affirmed.

Terence M. Chucas, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kim Nemoy, Assistant County Counsel, and Peter A. Ferrera, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

Tiffany S. (mother) contends that the juvenile court's jurisdictional and dispositional orders as to two of her five children, C.M. and K.M., must be reversed because the Department of Children and Family Services (Department) failed to adequately comply with its duty of inquiry under the Indian Child Welfare Act (ICWA) to determine whether they are Indian children.[1]  We find no error and affirm.

## FACTS

**Background**

The Department filed applications to take C.M., K.M. and their half siblings (Half Siblings) into protective custody.  At the detention hearing on December 11, 2019, the juvenile court determined that Carl M. (Carl) was the alleged father of C.M. and K.M. "at this time," and Lewis H. (Lewis) was the presumed father of the Half Siblings.  The juvenile court indicated that the classification of Carl was pending due diligence on his paternity.  Mother's counsel did not object to Carl being classified as an alleged father.  The juvenile court ordered the children detained.

---

[1]     Only C.M. and K.M. are subjects of this appeal.

2

The Department filed a Welfare and Institutions Code section 300² petition on behalf of all five children.

**ICWA Matters; Carl's Parentage**

Mother and Lewis submitted forms indicating they do not have Indian ancestry. The juvenile court determined that it had no reason to know that the ICWA applied to the Half Siblings.

Department personnel called Carl and he admitted to being the biological parent of C.M. and K.M. He said he had "Blackfoot" ancestry through both of his parents, provided the social worker with the paternal grandmother's name and telephone number, and stated that the paternal grandfather could not be contacted because he was in a senior facility. The social worker left a voicemail for the paternal grandmother but did not get a call back.

On January 14, 2020, mother informed an investigator that Carl was listed on C.M.'s and K.M.'s birth certificates. She reported that Carl called to check on C.M. and K.M. one or two times a year, and that he had last called them approximately five months before.

On January 22, 2020, the Department sent notices of C.M.'s and K.M.'s dependency case to the Bureau of Indian Affairs, the Secretary of the Interior and the Blackfeet Tribe of Montana. The notices contained mother's and Carl's names, addresses, and dates and places of birth. They also contained the name and date of birth of the paternal grandmother along with the name of the paternal grandfather. The notices were received on January 27 and January 28, 2020.

---

² All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

**The Jurisdictional and Dispositional Orders**

On February 10, 2020, the juvenile court sustained three section 300, subdivision (b) counts in an amended petition filed by the Department alleging: mother's five children were at risk of harm due to: (1) a violent altercation between mother and Lewis and his arrest for spousal battery; (2) mother's failure to protect the children from Lewis; and (3) mother's and Lewis's substance abuse. At the ensuing disposition hearing on February 25, 2020, the juvenile court reiterated its finding that Carl was an alleged father and removed the five children from mother. Mother's counsel did not object to Carl be classified as an alleged father.

This appeal followed.

## DISCUSSION

Mother argues that Carl is a biological rather than alleged father, the Department therefore had a continuing duty under the ICWA to inquire whether C.M. and K.M. were Indian children, and it failed that duty. The Department counters by arguing: the ICWA requirements were not triggered because Carl is an alleged father; mother forfeited her challenge to the juvenile court's paternity finding by not objecting below; and, regardless of Carl's paternity, he gave the Department no reason to believe C.M. and K.M. were Indian children.

In the reply, mother argues for the first time, inter alia, that there was insufficient evidence that Carl was an alleged father, the Department failed a statutory duty to obtain and file C.M.'s and K.M.'s birth certificates, and there is a presumption

4

that Carl signed a voluntary declaration of parentage when C.M. and K.M. were born.[3]

## I.  Classifications of Fathers.

California law recognizes that a man can be classified as a presumed, biological, or alleged father.  (*In re Zacharia D.* (1993) 6 Cal.4th 435, 449–450.)  A presumed father is defined by Family Code section 7611.  (*In re Jerry P.* (2002) 95 Cal.App.4th 793, 802.)  "A biological . . . father is one whose biological paternity has been established, but who has not achieved presumed father status. . . .  [Citations.]  A man who may be the father of a child, but whose biological paternity has not been established, or, in the alternative, has not achieved presumed father status, is an 'alleged' father.  [Citation.]"  (*In re Zacharia D., supra,* at p. 449, fn. 15.)

## II.  Relevant ICWA Law.

The ICWA applies to any state court proceeding involving the foster care or adoptive placement of, or the termination of parental rights to, an Indian child.  When a juvenile court has reason to believe a child is an Indian child, the social services agency must notify the Indian child's tribe.  A social services agency has a duty to inquire whether a child is or may be an

---

[3]      Also in the reply, mother suggests but does not expressly argue that Carl was a presumed father.  We have not considered this belated argument because it is not backed by reasoned argument (*Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862), and it is not argued under a separate heading or subheading (Cal. Rules of Court, rule 8.204(a)(1)(B); *Heavenly Valley v. El Dorado County Bd. of Equalization* (2000) 84 Cal.App.4th 1323, 1345, fn. 17).

Indian child. (*In re S.B.* (2005) 130 Cal.App.4th 1148, 1156–1158.) Under the ICWA, an Indian child is defined as an unmarried person under age 18 who is either (1) a member of an Indian tribe or (2) eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe. A parent is defined as any biological parent of an Indian child or any Indian person who has lawfully adopted an Indian child. The definition of parent does not include an unwed father where paternity has not been acknowledged or established. (*In re C.A.* (2018) 24 Cal.App.5th 511, 520.)

When children in a dependency matter have an alleged father rather than a biological father who claims Indian ancestry, the ICWA inquiry and notice requirements are not triggered. (*In re Daniel M.* (2003) 110 Cal.App.4th 703, 708–709; *In re E.G.* (2009) 170 Cal.App.4th 1530, 1533.)

**III.  Carl's Classification.**

A.  <u>Mother May Raise the Classification Issue for the First Time on Appeal</u>.

The juvenile court found that Carl is the alleged father of C.M. and K.M., and there was no objection from mother's counsel. In her opening brief, mother does not suggest that the juvenile court erred. She does, however, argue for the first time that the evidence showed that Carl is a biological father based on the following:  he admitted paternity to the Department, mother said father was listed on C.M.'s and K.M.'s birth certificates, and the Department sent out ICWA notices, indicating that it believed Carl was a biological father. Tacitly, mother requests that we make a finding of fact.

The Department argues that mother forfeited this claim because she did not raise it below. (*In re S.B.* (2004) 32 Cal.4th

6

1287, 1293 ["a reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court"].)  In the reply, mother cites *In re Isaiah W.* (2016) 1 Cal.5th 1, 13–14 (*Isaiah W.*), averring that ICWA notice issues can be raised for the first time on appeal.

The juvenile court in *Isaiah W.* placed a newborn in foster care after concluding that the Department did not have to provide ICWA notice.  The mother did not appeal the order.  More than a year later, the juvenile court terminated the mother's parental rights.  She appealed, arguing that the Department failed to comply with ICWA's notice requirements.  The reviewing court stated: "Because ICWA imposes on the juvenile court a continuing duty to inquire whether the child is an Indian child, we hold that the parent may challenge a finding of ICWA's inapplicability in an appeal from the subsequent order, even if she did not raise such a challenge in an appeal from the initial order." (*Isaiah W.*, *supra*, 1 Cal.5th at p. 6.)  The court quoted a lower appellate decision as noting that a parent's inaction does not constitute a waiver or otherwise preclude appellate review of ICWA notice.  (*Id*. at p. 13.)

Based on the policy embodied in *Isaiah W.*, we conclude that the classification issue cannot be separated from the notice issue.  Undeniably, it is Carl's classification that may trigger the ICWA.  We turn to the merits.

B.  Analysis.

1.  *Tacit Request for Factual Finding*.

Mother's opening brief essentially requests that we make a finding that Carl is a biological father.  She cites no law to support her request.  As the Department points out, it is the role of the trier of fact rather than a reviewing court to make findings

7

of fact. (*In re Michael G.* (2012) 203 Cal.App.4th 580, 584.) We decline to find that Carl is a biological parent, as mother urges. Our analysis could end here.

2. *Arguments Raise in the Reply.*

Mother's belated reply arguments—which the Department has not had an opportunity to respond to in writing—have been waived. (*Wurzl v. Holloway* (1996) 46 Cal.App.4th 1740, 1755, fn. 1.) Even if we were to entertain these arguments, we would conclude that they lack merit.

a. Sufficiency of the Evidence.

"When a trial court's factual determination is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court begins and ends with the determination as to whether, on the entire record, there is substantial evidence, contradicted or uncontradicted, which will support the determination, and when two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court. *If such substantial evidence be found, it is of no consequence that the trial court believing other evidence, or drawing other reasonable inferences, might have reached a contrary conclusion.* [Citations.]" (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873–874, italics in original.)

Mother argues: "Carl's status as [C.M.'s and K.M.'s] biological father was self-evident because [mother], Carl and the children's birth certificates stated he was their biological father." This argument fails.

"[I]n California an alleged father may acknowledge or establish paternity by voluntarily signing a declaration of paternity at the time of the child's birth, for filing with the birth

8

certificate (Fam. Code, § 7571, subd. (a)), or through blood testing (Fam. Code, § 7551)." (*In re Daniel M., supra,* 110 Cal.App.4th at pp. 708–709.)

The record does not contain C.M's or K.M.'s birth certificates, a declaration of paternity filed at the time of birth, or a blood test establishing paternity. Mother offers no argument that her out of court statements regarding the contents of the birth certificates was admissible. She has therefore waived any suggestion otherwise. (*Tan v. California Fed. Sav. & Loan Assn.* (1983) 140 Cal.App.3d 800, 811.) We conclude that substantial evidence supported the juvenile court's finding that Carl was only an alleged father.[4]

b. <u>Birth Certificates</u>.

Mother argues that the Department failed its statutory duty under section 224.3, subdivision (a)(5)(E) to obtain C.M.'s and K.M.'s birth certificates. But that statute only provides that ICWA notice shall include a copy of a child's birth certificate. It does not establish that the Department must obtain a birth certificate to establish paternity. There is no basis to conclude that the Department's failure to obtain C.M.'s and K.M.'s birth certificates warrants reversal.

---

[4] Mother separately argues that the existence of a paternity declaration must be presumed. She does not enlist this argument in service of her attack on the sufficiency of the evidence. Nor does she suggest that there is an intersection between these two issues. "It is not our responsibility to develop an appellant's argument." (*Alvarez v. Jacmar Pacific Pizza Corp.* (2002) 100 Cal.App.4th 1190, 1206, fn. 11.)

c. Declaration of Paternity.

Health and Safety Code section 102425, subdivision (a)(4) provides that a birth certificate shall not contain the name of an unwed father unless the woman who gave birth and the father signed a voluntary declaration of parentage at the hospital before the birth certificate is submitted for registration. Here, mother told the Department that Carl's name was on C.M.'s and K.M.'s birth certificates. Thus, she contends that we must presume that she and Carl signed the voluntary declaration of parentage, noting that it "is presumed that official duty has been regularly performed." (Evid. Code, § 664.) Contrary to what mother suggests, there is no presumption here because there is no evidence that the relevant members of the hospital staff were aware that mother and Carl were not married. (*In re D.A.* (2012) 204 Cal.App.4th 811, 826–827; but see *In re Raphael P.* (2002) 97 Cal.App.4th 716, 736–739 [applying the presumption in a case in which the father declared he was given a voluntary declaration of parentage at the hospital, and in which the birth certificate was in the court record].)

**IV. The ICWA is Inapplicable.**

Mother's appeal is premised on the ICWA being triggered because Carl was a biological father. She has failed to establish that the trial court erred in finding that Carl was an alleged father, or that the Department neglected a duty to establish Carl's paternity. Thus, the ICWA was not triggered and the juvenile court's order must be affirmed. (*In re E.G., supra,* 170 Cal.App.4th at p. 1533.)

All other issues are moot.

10

**DISPOSITION**

The jurisdictional and dispositional orders are affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
ASHMANN-GERST


We concur:


_____, P. J.
LUI


_____, J.
HOFFSTADT

11