Filed 8/20/14  In re K.P. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

In re K.P., a Person Coming Under the Juvenile Court Law.

| | |
|---|---|
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E059822 |
| Plaintiff and Respondent, | (Super.Ct.No. RIJ1200260) |
| v. | O P I N I O N |
| T.P. et al., | |
| Defendants and Appellants. | |

APPEAL from the Superior Court of Riverside County.  Tamara L. Wagner, Judge.  Affirmed.

Konrad S. Lee, under appointment by the Court of Appeal, for Defendant and Appellant, T.P.

Robert McLaughlin, under appointment by the Court of Appeal, for Defendant and Appellant, L.H.

1

Pamela J. Walls, County Counsel, and Sophia H. Choi, Deputy County Counsel, for Plaintiff and Respondent.

## I. INTRODUCTION

In this juvenile dependency proceeding concerning K.P., the juvenile court terminated reunification services for K.P.'s parents and set a hearing to be held pursuant to Welfare and Institutions Code section 366.26.[1] Appellant, T.P. (Father), filed a request to change court order pursuant to section 388, or a "section 388 petition," requesting the court place K.P. in his care and terminate juvenile court jurisdiction. Alternatively, he asked that K.P. be placed "back in his care on the condition he cooperate with law enforcement welfare checks or in-home checks by a different social services agency." The trial court denied the petition without a hearing on the ground that it did not state new evidence or a change of circumstances. Father appealed. For the reasons set forth below, we affirm the court's order.[2]

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] The record on appeal in this case also includes notices of appeal by Father and K.P.'s mother, appellant L.H. (Mother), from orders made on October 3, 2013, at a hearing held pursuant to section 366.3. In their briefs on appeal neither parent raises any issue or makes any argument with respect to those orders. We therefore consider the appeals from the October 3, 2013, orders abandoned. (See *Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6; *Wurzl v. Holloway* (1996) 46 Cal.App.4th 1740, 1754, fn. 1.) Mother did file an opening brief in this case, but it is limited to expressing her joinder in Father's opening brief.

## II. FACTUAL AND PROCEDURAL SUMMARY

### A. *Background*[3]

Mother gave birth to K.P. in October 2011. At that time, Mother was taking methadone for treatment of a heroin addiction. K.P. was born addicted to methadone and hospitalized for the first four months of her life. After K.P. was discharged from the hospital on February 20, 2012, Mother and K.P. moved in with Father at the paternal grandmother's house.

In March 2012, Mother and Father were involved in a domestic violence incident in which each inflicted injuries on the other. The parents were arrested and K.P. was taken into protective custody and placed with a foster family. The parents disclosed another domestic violence incident between them that took place about one year earlier.

Respondent, Riverside County Department of Public Social Services (DPSS), filed a petition concerning K.P. under section 300, subdivisions (b) and (g). At a contested jurisdictional/dispositional hearing, the court found true allegations of domestic violence, child endangerment, and Mother's use of controlled substances. K.P. was declared a dependent of the court and removed from the parents' physical custody. The court

---

[3] Because of the narrow focus of this appeal, our statement of the factual and procedural background regarding the underlying case is brief. More detailed factual and procedural histories regarding the case are set forth in our prior opinion denying Father's petition for extraordinary writ in case No. E058904, and in our opinions filed concurrently herewith in case Nos. E057591 and E059361. We take judicial notice of the records in these prior appeals. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

authorized visits to take place at the discretion of DPSS and to make any appropriate placement.

DPSS was ordered to provide, and the parents ordered to participate in, reunification services. Mother's and Father's case plans called for participation in domestic violence/anger management programs and counseling. In addition, Mother was required to participate in a substance abuse program and random drug testing.

One-hour visits between the parents and K.P. initially took place twice per week. The social worker reported that during the initial six-month review period, Father had "the ability to have appropriate, loving, and attentive contact with his daughter"; Mother's visits were likewise "appropriate and pleasant" and K.P. "appeared to be happy and well bonded to [Mother]." However, social workers described Father's behavior toward DPSS staff in terms such as "irate," "irrational," "verbally abusi[ve]," "volatile," "agitated," "dangerous," "abrasive, aggressive, disrespectful, and erratic." Because of Father's behavior, DPSS requested the court to terminate Father's visits and order him to undergo a psychological evaluation. The court reduced Father's visits to one-half hour, once each week. It also ordered the requested psychological evaluation.

After the six-month review hearing in November 2012, the court reinstated Father's regular visits with K.P. It also repeated its order that Father undergo a psychological evaluation.

In December 2012, the court ordered that K.P. have an extended visit with the paternal grandmother and authorized Father to reside in the paternal grandmother's

4

house. After the social worker received reports about Father's hostile behavior toward the paternal and maternal grandmothers, DPSS applied for an order removing K.P. from the house. At the time for the hearing on the application, Father left the courthouse. When he was reached by telephone, he was driving a car with K.P. inside and on his way to a freeway. He initially refused to return to court, but relented when the court indicated he would be arrested if he did not. The court then removed K.P. from the paternal grandmother's home and placed her in DPSS's custody.[4]

In a report prepared for the 12-month review hearing, the social worker stated that Mother and Father "appear to be spiraling out of control." Mother had "admittedly been abusing drugs throughout this reporting period" and "no showed" for random testing on five dates in the preceding three months. Father "continues to be volatile, unstable, and defiant instead of following through with the services that could possibly get his child returned to his custody." He informed the social worker that he was not going to complete the court-ordered psychological evaluation because the psychologist "'is a friend of the Judge.'"

A contested 12-month review hearing took place over several days in May and June 2012. At the conclusion of the hearing, the court terminated reunification services

---

[4] Father appealed from the orders made at the six-month review hearing and from the order removing K.P. from the paternal grandmother's home. Those appeals are addressed in our nonpublished opinion in case No. E057591.

for the parents, and set a hearing to be held pursuant to section 366.26 on October 3, 2013.[5]

On July 24, 2013, approximately seven weeks after the termination of services, DPSS submitted an ex parte application for an order to reduce the parents' visitation to one hour once per month. The application was based in part on the fact that Father had not visited K.P. since March 2013 except to attend a doctor's appointment for K.P.'s immunizations. Following a hearing, the court granted the application.[6]

B. *Section 366.26 Report*

In September 2013, DPSS filed its section 366.26 report. K.P. was reportedly in good health and meeting her developmental milestones. She was living in a foster home and had overnight and weekend visits with a maternal aunt, who had been identified as a prospective adoptive parent. At the time the report was filed, the maternal aunt's home was being assessed by DPSS's relative assessment unit.

Neither parent had visited K.P. or seen her since her immunization appointment on July 12, 2013. Nor had they contacted DPSS to schedule a visit. According to the social

---

[5] Father filed a petition for extraordinary writ pursuant to rule 8.452 of the California Rules of Court concerning these orders. In denying the petition, we stated: "It is abundantly clear that father's failure to reunify was not due to the inadequacy of services provided by the department, but by the fact that father set himself up as the final arbiter of what he reasonably should or should not be required to do. He was mistaken, and in persisting in this attitude, he sabotaged his efforts to reunify with his child." (*In re T.P.* (Sept. 13, 2013, E058904) [nonpub. opn.], p. 12.)

[6] The parents appeal the court's order reducing visitation. We addressed that appeal in a nonpublished opinion in case No. E059361.

worker, "[f]uture contact between the child and her biological parents may be detrimental to her overall development. This is due to both parents['] consistent erratic and confrontational behaviors with all parties involved in this case. Additionally, both parents have severely neglected issues with substance abuse and their mental health."

On October 3, 2013, the court continued the section 366.26 hearing to February 3, 2014, to allow DPSS time to complete an adoption assessment.

C. *Father's Section 388 Petition*

On October 10, 2013, Father filed a section 388 petition requesting that K.P. be placed in his care and that the court either terminate its jurisdiction or make placement with him conditioned upon his cooperation "with law enforcement welfare checks or in-home checks by a different social services agency." The petition was supported by declarations from Father and Mother. The declarations set forth an extensive list of complaints covering, among other matters, DPSS's care of K.P., the psychologist's opinion about Father, reunification services, the failure to receive overnight and weekend visitation, the court's alleged fraud and improper delegation of authority to DPSS, procrastination by DPSS's relative assessment unit, the alleged incompetency of their attorneys, and the conduct of the police officers who responded to the domestic violence that triggered this case.

The court denied the petition without a hearing on the ground that it did not state new evidence or a change of circumstances. Father appealed.

### III.  DISCUSSION

Section 388 states, in pertinent part:  "(a)(1)  Any parent or other person having an interest in a child who is a dependent child of the juvenile court . . . may, upon grounds of change of circumstance or new evidence, petition the court . . . for a hearing to change, modify, or set aside any order of court previously made . . . .  [¶]  . . .  [¶]  (d)  If it appears that the best interests of the child . . . may be promoted by the proposed change of order, . . . the court shall order that a hearing be held . . . ."

A section 388 petition must state a prima facie case in order to trigger the right to proceed by way of a full evidentiary hearing.  (*In re Edward H.* (1996) 43 Cal.App.4th 584, 592.)  That is, the petition must make a prima facie showing of facts sufficient to sustain a favorable decision if the facts are credited.  (*Id.* at p. 593; see *In re Marilyn H.* (1993) 5 Cal.4th 295, 310.)  The court must liberally construe the petition in favor of its sufficiency (see Cal. Rules of Court, rule 5.570(a); *In re Angel B.* (2002) 97 Cal.App.4th 454, 461), which is to say the petition must be "liberally construed in favor of granting a hearing to consider the parent's request.  [Citations.]"  (*In re Marilyn H., supra,* at pp. 309-310; *In re Jeremy W.* (1992) 3 Cal.App.4th 1407, 1413-1414.)

"'There are two parts to the prima facie showing:  The parent must demonstrate (1) a genuine change of circumstances or new evidence, and that (2) revoking the previous order would be in the best interests of the children.  [Citation.]'"  (*In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1079 [Fourth Dist., Div. Two].)  "[T]he change of circumstances or new evidence must be of such significant nature that it requires a setting

8

aside or modification of the challenged prior order." (*Ansley v. Superior Court* (1986) 185 Cal.App.3d 477, 485.)

"In determining whether the petition makes the necessary showing, the court may consider the entire factual and procedural history of the case." (*In re Justice P.* (2004) 123 Cal.App.4th 181, 189.) "[I]f the liberally construed allegations of the petition do not make a prima facie showing of changed circumstances and that the proposed change would promote the best interests of the child, the court need not order a hearing on the petition." (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 806; *In re C.J.W., supra,* 157 Cal.App.4th at p. 1079.)

We review a juvenile court's summary denial of a section 388 petition for an abuse of discretion. (*In re Marcos G.* (2010) 182 Cal.App.4th 369, 382.)

Although the declarations supporting Father's section 388 petition encompass numerous and wide-ranging complaints, on appeal Father focuses on one area: Visitation. More specifically, he asserts that he has made a prima facie showing that DPSS "was biased against him in facilitating and reporting on visitation." In particular, Father contends: (1) DPSS scheduled his visits from the outset during work hours when it was impossible for him to attend; (2) DPSS used his frustration about K.P.'s diaper rash "to demonize him as an obsessive and irrational parent"; (3) in the summer of 2012, DPSS moved to cut off visitation even though Father's interactions with K.P. were good; and (4) DPSS's reports about visits said little about the nature and quality of Father's interactions with K.P.

9

Father's assertions regarding visitation, if credited, do not constitute new evidence or a change of circumstances justifying the requested change of court order. First, we note that Father's first complaint—that DPSS scheduled his visits at the outset during work hours—is not mentioned in the declarations supporting his petition. On appeal, Father cites to the social worker's jurisdictional/dispositional report filed in April 2012. In that report, the social worker reported that Father, in March 2012, was agitated because visits with K.P. were scheduled during his work hours. Regardless of whether DPSS acted reasonably with respect to scheduling visits in March 2012, the evidence regarding that issue was before the court in April 2012, before the jurisdictional and dispositional hearings, and does not constitute new evidence or a change of circumstances.

The evidence supporting Father's allegations concerning DPSS's responses to his frustration over K.P.'s diaper rash, including DPSS's efforts to reduce or terminate visitation were also well known to the court. In August 2012, DPSS filed an ex parte application to terminate visitation between Father and K.P. based upon what the social worker described as Father's "erratic behavioral issues that include threatening staff, provoking staff to hit him while holding the child in front of himself, lack of self-control and verbally abusing staff." The social worker informed the court that Father's "main issue" was K.P.'s diaper rash and DPSS's failure to address the issue. Father testified at a hearing on the application in September 2012, and stated that he was concerned about the diaper rash and that DPSS has "neglected [K.P.'s] wellbeing." He also denied that he

10

was ever hostile or threatening toward DPSS staff. The court ultimately decided to reduce, but not eliminate, visitation. Disputed issues regarding visitation were also litigated in October 2012 and July 2013. The statements in the declarations supporting Father's section 388 petition regarding these issues do not constitute new evidence or changed circumstances.

Finally, Father's claim that DPSS's reports about visits should have included more information regarding Father's interactions with K.P. is insufficient to support the petition. We note that DPSS generally gave favorable reports regarding Father's interactions with K.P. In its jurisdictional/dispositional report, the social worker stated: Mother and Father "were appropriate during the [March 21, 2012] visit and they took turns holding [K.P.] and interacting with her. They were attentive to [K.P.]'s needs as they changed her diaper and fed her during the visit. They also interacted with her by showing her toys and talking to her. There were no concerns noted during the visit." In a report prepared for the six-month review hearing, the social worker wrote: "During this reporting period, [Father] has shown the ability to have appropriate, loving, and attentive contact with his daughter." Regarding another visit, he stated that Father "was appropriate with [K.P.] and was attentive to her needs." In December 2012, the social worker noted that the "parents have been appropriate and compliant since the last hearing. . . . It is clear that [K.P.] has a loving bond with both parents and they with her." Moreover, even as the court was ordering the termination of services at the 12-month

11

review hearing, it acknowledged that "all the reports indicate that [Father is] good with [his] daughter."

Father's complaint about the lack of positive statements in the social worker's reports brings to light the fact that, other than his attendance at one doctor's visit, Father has not visited K.P. or called DPSS to schedule a visit in the six months preceding his section 388 petition. DPSS cannot make positive statements about Father's visits with K.P. when he does not make an effort to visit her.

Significantly, even if Father's statements regarding visitation issues constituted new evidence or changed circumstances, they do not address the fundamental reason why the court terminated services and set the section 366.26 hearing: Father stopped participating in his case plan and refused to undergo a psychological evaluation. The lengthy declarations supporting Father's section 388 petition do not, for example, include any evidence that Father has completed the anger management program or counseling that was required of him or that he has agreed to comply with the court's order to undergo a psychological evaluation. Thus, regardless of DPSS's alleged bias against Father or its alleged use of visitation as a way of punishing Father, the court could reasonably conclude that Father's evidence would not justify the change Father requested.

12

## IV.  DISPOSITION

The October 17, 2013 order denying Father's section 388 petition is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

KING
J.


We concur:

HOLLENHORST
Acting P. J.

MILLER
J.

13