[Civ. No. 15188. Second Dist., Div. Two. May 27, 1946.]

GIFFORD D. RICHARDSON, as Executor, etc., Respondent, v. CHARLES H. SUITER et al., Appellants.

Vernon M. Brydolf and Charles Hollopeter for Appellants.

Frederick G. Stoehr for Respondent.

WILSON, J.—This is an action to recover money alleged to have been obtained from an aged and infirm couple through the fraud of defendant, Charles H. Suiter. For the sake of brevity, since he was the actual perpetrator of the fraud, he will be referred to herein as defendant. His wife, Anna I. Suiter, is made a defendant by reason of the fact that the deed hereinafter discussed named her as one of the grantees and presumably she shared in the fruits of the fraud. Defendants have appealed from the judgment rendered against them.

Frank M. Compton and Mary E. Compton, husband and wife, on and prior to August 13, 1943, owned a farm in Missouri. He was 96 years of age, blind, and bedridden; she was 83 years of age, an invalid, and partly blind. They were incapable of attending to their business or of managing their property. They desired to sell the farm and so advised defendant, who was and had been their confidential agent and adviser, whom they trusted and upon whom they relied. He undertook to negotiate the sale of the farm and to attend to the details of consummating the transaction. He told them that it would be necessary that they convey title to the farm to him and to assign their claim for unpaid rent thereon in order to facilitate his collection of rent from the tenants and his bargaining with prospective purchasers and consummating the sale. He also stated that if they would convey the farm to him he would sell it at a high price and collect the unpaid rent for them. Relying upon said statements Mr. and Mrs. Compton conveyed the legal title about August 13, 1943,

to defendant and his wife. On the same day the Suiters executed a mortgage on the property to Mr. and Mrs. Compton and Jennie B. Heflin, the latter being Mrs. Compton's sister, as joint tenants, for the sum of $10,000. The deed and the mortgage were prepared by an attorney at the request of and under instructions from defendant.

Mr. Compton died on September 22, 1943, still believing defendant's representations to be true. Thereafter Mrs. Compton executed an assignment to him of her claim for rent of the farm. About October 30, 1943, defendant went to Missouri and sold the farm for $17,000 and in January, 1944, he collected rent in the sum of $952.55. In November, 1943, defendant paid the sum of $10,000 to Mrs. Compton and retained the balance of the purchase price and all of the rent. Mrs. Compton died December 12, 1943. This action is brought by the executor of her estate to recover the balance of the sale price and the rents collected by defendant.

As grounds for reversal of the judgment it is asserted that certain findings are not supported by the evidence and that plaintiff is estopped to deny that a bona fide sale of the property was made to defendant.

1. *The finding that an alteration was made in the mortgage after its execution:* ■ The court found that after the execution of the mortgage defendants caused to be typed thereon the words "This is a purchase money mortgage." The attorney who dictated the instrument produced his office copy which did not bear the words in question. He testified that he directed his secretary, Mrs. Stratton, to type the words on the mortgage and according to his best recollection he gave her that direction because defendant told him that he was buying the farm from Mr. and Mrs. Compton and might have said something to him about adding those words. The attorney further testified that he did not tell the Comptons that he was preparing the documents; that the Comptons and the Suiters had all been his clients previously but at that time the Suiters only were his clients, his professional relationship with the Comptons having ceased. More definite evidence concerning the addition of said words to the mortgage than that of the attorney was that of Mrs. Stratton, who testified that the words were typed at her employer's direction immediately after the preparation of the mortgage and before its execution. In view of all the circumstances the court was

not required to believe her testimony but was justified in drawing contrary inferences from the entire evidence, written and oral. Since the court observed the witnesses and their manner of testifying and evaluated their evidence, the finding will not be disturbed.

Whatever may be the truth, the finding is immaterial. In fact, a finding that the words were placed on the mortgage at the time it was prepared would not influence the result of the appeal for the reasons (1) that the Comptons never saw the mortgage and knew nothing of its contents, it having been mailed to the county recorder by Mrs. Stratton immediately after it was executed by the Suiters, and (2) that the judgment would not be affected by a finding either way on the subject inasmuch as there are other findings that fully support it.

2. *The finding that the mortgage was not delivered to the mortgagees.* ▉ The court found that the mortgage was never delivered to or came into the possession of the Comptons or either of them. The evidence fully supports the finding. Both the deed and the mortgage were prepared by said attorney at the request of defendant and the latter paid the fee therefor. The Suiters were his clients and the Comptons were not. The attorney did not consult with the Comptons at any time concerning the transaction or concerning the deed or the mortgage.

After having been typewritten the documents were placed in the possession of Mrs. Stratton. Accompanied by defendant she went to the Comptons' home and procured their signatures to and their acknowledgment of the execution of the deed. Mrs. Heflin, Mrs. Compton's sister, was in the room during all the time they were present. She testified that she thought defendant had another paper in his pocket but did not know what it was. Neither defendant nor Mrs. Stratton said anything about a note or mortgage. After the deed had been signed Mrs. Stratton went to defendant's home where he and his wife signed and acknowledged the mortgage. Mrs. Stratton immediately mailed both papers to the county recorder in Missouri. When recorded they were returned by mail to her employer, defendant's attorney.

That the Comptons had no knowledge of the existence of the mortgage is uncontradicted. ▉ The possession of the mortgage by Mrs. Stratton and the mailing of the same to

the recorder did not constitute a delivery to the Comptons since she was not authorized to represent them and her employer was the attorney for the adverse party.

3. *The finding that defendant was guilty of fraud.* ▮ The court found that defendant undertook and agreed to negotiate a sale of the farm and to attend to the details of consummating the sale, and for the purpose of deceiving and defrauding the Comptons falsely and fraudulently represented to them that it would be necessary for them to convey title to the farm to him and to assign to him their claim for rent in order to facilitate a settlement with the tenants and a sale to prospective purchasers; that if they would convey title to him he would sell the farm at a high price and collect the rent for them; relying upon said representations and upon his further assurance that the deed was fictitious or "phony" the Comptons conveyed title to defendant, who was then their confidential agent and trustee, and later Mrs. Compton executed an assignment of the rent to him. This finding is supported by the evidence.

Mrs. Heflin testified that on one occasion when defendant was at the Comptons' home the sale of the farm was discussed and defendant "proposed that if he had a 'phony' deed made out to him he could go out and sell it [the farm] as if it were his own"; Mrs. Compton said she would give him a "phony" deed; he said he could not sell the farm unless he had the deed and in case Mr. Compton should die he, defendant, would be able to go on with the sale; that on a later date when defendant and Mrs. Stratton came with the deed to be signed by Mr. and Mrs. Compton there was further conversation about its being a "phony" deed. Defendant denied that he ever made any statement about a "phony" deed and Mrs. Stratton stated that she made no reference to such a deed but did not deny that it was mentioned while she was present. Mrs. Heflin's testimony sustains the finding of fraud. We can give no more weight to the contradictory evidence than was given by the trial court.

On the day that defendant left for Missouri to sell the farm he called at the Comptons' home and presented an itemized list of disbursements in connection with the prospective sale. At his request Mrs. Compton paid him $100 to cover expenses. One of the items was for attorney's fees amounting to $20 and another was specified as car fare and berth to Kansas

City. While in Missouri he wrote a letter to his attorney stating that he had sold the farm for $17,000; that in connection with the sale he had paid attorney's fees, cost of advertising, farm repairs, agent's commission, and taxes; that in addition to the $10,000 mortgage he expected to pay Mrs. Compton $4,000. If defendant had been a bona fide purchaser, as he contends, there is no reason for his having asked the Comptons to pay his expenses to Missouri, nor is there any reason why he should have itemized the expenses incurred in making the sale.

4. *The defense of estoppel.* Defendants claim that plaintiff is estopped to deny that a bona fide sale was made for the reason, so they assert, that prior to the death of Mr. and Mrs. Compton each treated the transaction as a valid sale. Mr. Compton was ill and bedridden at the time he signed the deed—so infirm that it was necessary to raise him in his bed to enable him to sign the deed with his mark, assisted by defendant and Mrs. Stratton. He died shortly thereafter without knowledge of the existence of the mortgage. In the last discussion between him and defendant the latter said that he could not buy the farm and was not interested in buying property in Missouri. Mr. Compton's death occurred before the farm was sold and no act of his can be considered as an estoppel. There was nothing in his conduct to indicate that he regarded defendant in any other capacity than as his trusted agent.

The claim of estoppel made against Mrs. Compton is not sustained by the evidence. In addition to the deed she signed a power of attorney appointing defendant as her attorney in fact, reciting that a question might arise relative to the collection of rents of the farm and disclaiming any interest therein. This document was in furtherance of the original arrangement wherein defendant was authorized to sell the property and to collect the rents.

After her husband's death Mrs. Compton filed a petition to terminate their joint tenancy in certain property, including the mortgage in question. In this proceeding she was represented by the same attorney who had prepared the deed and mortgage at the request of defendant. Since the attorney had knowledge of the mortgage and presumably was without any knowledge or information of the fraud perpetrated by

defendant he obviously would deem it proper to list the mortgage as a part of the property held in joint tenancy. Mrs. Compton at that time was unable to realize the purport of her acts and is not chargeable with knowledge of the legal effect, if any, of claiming the mortgage as a part of the joint estate of herself and her deceased husband.

Defendant testified that he saw Mrs. Compton only twice after he returned from Missouri, once on November 16 when she was in a semicomatose condition due to a narcotic which had been prescribed for her, and once on December 5 when she was asleep. She died on December 12.

There is not the slightest indication in the record that either Mr. or Mrs. Compton ever recognized the transaction as being other than one of agency and there is nothing upon which to base the claim of estoppel.

5. *Respondent's objection to allowance of commission to appellant.* ▇▇ The court found that defendant was entitled to $1,700 as a reasonable commission for effecting the sale of the property and allowed credit therefor upon the amount realized from the sale. Plaintiff objects to the allowance of the commission upon the ground that the broker, having defrauded his principal as found by the court, forfeited his right to a commission, citing *Chain* v. *Katze,* 62 Cal. App. 615, 617 [217 P. 578], which so holds. Since plaintiff has not appealed from any portion of the judgment this court cannot order the modification requested by plaintiff.

Judgment affirmed.

Moore, P. J., and McComb, J., concurred.