[Civ. No. 26878. Second Dist., Div Two. Nov. 12, 1963.]

JOSEPH TAMPICO et al., Plaintiffs and Appellants, v. ERNEST J. WOOD et al., Defendants and Respondents.

Loveless, Schauer & Clarke and Alan I. Epstein for Plaintiffs and Appellants.

Frank S. Whiting and John Whyte for Defendants and Respondents.

FOX, P. J.—Plaintiffs Joseph and Berenice Tampico brought this action for rescission of an agreement for the purchase of certain real property and for damages against defendants Thelma and Ernest Wood, the sellers, and defendant Beck, a real estate broker. At a previous trial judgment was entered for defendants Wood against the plaintiffs, and for the plaintiffs against defendant Beck for damages. On appeal the judgment was reversed. On a retrial the court ordered the cancellation of certain notes and trust deeds executed by the plaintiffs and gave plaintiffs a substantial judgment against Beck. Plaintiffs on this judgment roll appeal seek additional relief against defendants Wood.

The facts, as found by the trial court, are that Beck, a licensed real estate broker, went to the home of plaintiffs on May 19, 1958, and interested them, as an investment opportunity, in purchasing the Woods' trailer court property in Pasadena. Beck made misrepresentations concerning the property upon which the plaintiffs relied.[1] The same evening the plaintiffs accompanied Beck to the property, inspected the area, then returned home and signed a deposit receipt and gave Beck a check for $7,500, payable to him, as a deposit on account of the purchase price of the property. After this meeting with the plaintiffs, Beck took the offer to buy to the Woods and inquired whether they would sell the trailer court. The Woods accepted the offer and signed the deposit receipt. An escrow was opened which provided for a total purchase price of $75,000 and for $7,500 to be paid to Beck outside of escrow as a part of his commission. The Woods had agreed in the deposit receipt and escrow instructions to pay Beck a commission of $10,250 and Beck retained the down payment of $7,500 for his own use on account of the broker's commission.

After the close of escrow, plaintiffs sent the Woods a written notice of rescission on the ground of "fraud and misrep-

---

[1] At the time of trial Beck was in the California State Penitentiary.

resentations made which were material inducements to our purchase of the said property."

The trial court found that "At the time Beck presented the transaction proposal and deposit slip to the defendants on the night of May 19, and at all times thereafter, he failed to disclose the representations, false or otherwise, which induced the plaintiffs to enter into negotiations for purchase of the property. The defendants had no notice or information regarding Beck's misrepresentations until they received the notice of rescission. ... The defendants did not at any time, either orally or in writing or by conduct, express or indicate that Beck was authorized to sell the property.

"The plaintiffs at the time escrow was opened on May 21 had no knowledge of the services Beck was rendering for the defendants in connection with collection of rentals from Richey [manager of the trailer court].

"The evidence establishes the fact that the conduct and acts of Beck in connection with the transaction show conclusively that he was on a frolic of his own interested only in creating a chain of circumstances whereby he could quickly obtain money for himself under the false guise of negotiating a sale of real estate made in good faith by the plaintiffs and defendants." The court then determined that "when plaintiffs contracted to purchase the real property ... Beck was neither the agent, servant, nor employee of defendants Ernest J. Wood and/or Thelma A. Wood with reference to sale of the real property ... nor was he authorized expressly or impliedly to make any representations with reference thereto."

Although the justification for granting rescission in this case does not appear in the record, it was the relief sought by plaintiffs. Since the defendants do not appeal from the judgment we need not consider their argument that rescission was unwarranted here. (*Richardson* v. *Suiter*, 74 Cal.App.2d 682, 688 [169 P.2d 252]; *Hill* v. *Hill*, 82 Cal.App.2d 682, 702 [187 P.2d 28].)

Plaintiffs' primary contention is that since rescission was granted, they should have restored to them any value parted with in order to establish the status quo. A complete status quo, however, obviously cannot be achieved in the instant case. One of the parties to the agreement will have to suffer the loss of the money retained by Beck as a commission, and which cannot, apparently, be restored.

The general rule is that where one of two innocent

persons must suffer because of the conduct of a third person, the loss must be borne by the person whose negligence or misplaced confidence enabled the injury to occur. (*Poorman* v. *Mills & Co.*, 39 Cal. 345 [2 Am.St.Rep. 451]; *Asp* v. *Lowry*, 117 Cal.App.2d 81, 85 [254 P.2d 967]; 18 Cal.Jur.2d, Equity, § 32; Civ. Code, § 3543.) ▓▓▓ In the present appeal the record supports the conclusion that, as between the parties to the contract, the plaintiffs were initially responsible for causing the loss.

The plaintiffs initiated the chain of events leading up to the loss by first misplacing their confidence in Beck. Their decision to buy the land on Beck's representations and their signing of the deposit receipt constituted, in effect, an offer to buy which they authorized him to take to the owners of the land, the Woods, to be accepted.[2] The Woods' decision to accept the plaintiffs' offer does not alter the fact that it was the plaintiffs who first misplaced their trust in Beck. As was said in *Schultz* v. *McLean*, 93 Cal. 329, 357 [28 P. 1053]: "In this case, plaintiffs and defendant were both innocent. Neither knew that the fraud was being practiced; but if that fraud was productive of injury, the injury must result to the plaintiffs, for they placed it in the power of the wrong-doer to perpetrate the fraud."

The trial court, in exercising its equitable discretion, apparently considered the foregoing principles in reaching a solution that it considered fair to all parties. An attempt was made to approach the status quo as nearly as possible. The judgment for plaintiffs against Beck will, at least theoretically, make them whole by restoring to them the money they parted with as a down payment. If, as a practical matter, the judgment against Beck is worthless, it is not unreasonable under the circumstances that plaintiffs bear the loss rather than the Woods.

▓▓▓ Plaintiffs argue that Beck was the agent of the Woods, and therefore that his fraud is chargeable to them. It was expressly determined by the trial court, however, that no agency relationship existed between Beck and the Woods at the time the fraudulent statements were made. On a judgment roll appeal it is presumed that the trial court received

---

[2]The finding of the trial court states: "The deposit receipt further provided ... that 'property is sold subject to approval of owner and this offer is effective until ———— to enable agent herein to procure owner's approval....' "

evidence to support its findings. (*White* v. *Jones*, 136 Cal. App.2d 567, 571 [288 P.2d 913].)

■ Plaintiffs also contend that the Woods ratified Beck's misconduct by accepting and retaining the benefits derived from the transaction. To support such a theory, it must be shown that the Woods had full knowledge of all the material facts involved in the transaction at the time of the purported ratification. (*Chastain* v. *Belmont*, 43 Cal.2d 45, 58 [271 P.2d 498] ; *Bate* v. *Marsteller*, 175 Cal.App.2d 573, 582 [346 P.2d 903].) No such showing is made in the record, nor does it appear that the Woods were in any way negligent in failing to discover Beck's fraud.

■ Finally, it is argued by plaintiffs that the $7,500 paid by them was a benefit received by the Woods which, upon granting recission, should be restored to the plaintiffs. The trial court specifically found, however, that the Woods did not receive any portion of this amount, and we must assume that there was evidence to support this finding. (*White* v. *Jones, supra,* 136 Cal.App.2d 567, 571.) But it is argued that since the Woods apparently authorized Beck to retain the money as part of his commission, the Woods obtained the benefit of the $7,500. However, no commission was in fact owed to Beck by the Woods because he had not procured an effective contract for them. Since they did not owe him any commission, the money paid to him cannot be said to have benefited the Woods. Furthermore, at the time Beck was paid, the Woods had no knowledge of his fraud, nor did they know that an effective sale had not been made. Therefore they had no reason to suspect that they did not owe him the commission.

■ The refusal to award plaintiffs the sums claimed by them as out-of-pocket expenses incurred in maintaining the property was a matter for the trial court's discretion. (*Utemark* v. *Samuel*, 118 Cal.App.2d 313, 318 [257 P.2d 656].) We will assume that there was evidence to justify the refusal. (*White* v. *Jones, supra.*)

■ In the attempt by the trial court to effect the status quo it inadvertently failed to restore title to the property to the Woods, although it did cancel all evidence of indebtedness for the purchase price. In addition, $1,050 paid by plaintiffs on the purchase price and received by the Woods was not returned to plaintiffs, although the note upon which said sum was paid was cancelled. No reason appears for the court's failure to order the title reconveyed to the Woods and the

$1,050 returned to the plaintiffs.[3] Logic dictates that both be done to more completely effect the status quo sought by the court.

As between the plaintiffs and the Woods, therefore, the judgment is reversed with directions to enter a new judgment not inconsistent with the views expressed herein. The parties shall bear their own costs on this appeal.

The judgment in favor of plaintiffs against Beck is affirmed.

Herndon, J., concurred.

[3]The trial court found that the Woods received this "portion of the plaintiffs' losses ...."