Filed 12/8/14  Candelaria v. Valencia CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| MARGIE M. CANDELARIA, | B252768 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. PC051712) |
| v. | |
| LEONEL VALENCIA, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Stephen P. Pfahler, Judge.  Affirmed.

Forry Law Group, Craig B. Forry, for Plaintiff and Appellant.

Russell J. Thomulka, for Defendant and Respondent.

Plaintiff Margie Candelaria brought suit against defendants Leonel Valencia and Daniel Mendoza, whom she alleged duped her into conveying to Mendoza a one-half interest in real property located at 18223 Sandringham Court, Los Angeles, so that Valencia could later encumber and foreclose the property. In addition to her fraud claim, Candelaria asserted claims for quiet title and declaratory relief. Valencia sought relief against Mendoza as well as the application and enforcement of an equitable mortgage on 18223 Sandringham Court. After a bench trial, the trial court granted judgment in favor of both Candelaria and Valencia against the absent Mendoza, in the amounts of $40,000 and $120,000, respectively. The trial court also granted judgment for Candelaria against Valencia, "in that the Court quiets title on the property as of June 21, 2011," and judgment for Valencia against Candelaria on the equitable mortgage count in the amount of $40,000, which Candelaria was to pay as a condition precedent to the quieting of title and declaratory relief. Candelaria timely appealed. We affirm.

**FACTUAL BACKGROUND**

Plaintiff Margie Candelaria's daughter, Pauline Macareno, is the sole owner of Hopevale Development, Inc. ("Hopevale"), a company that purchases, rehabilitates, and resells distressed real properties. Hopevale purchased a home located at 18223 Sandringham Court, Los Angeles, for $350,000 in May 2010. Hopevale spent the next few months rehabilitating the Sandringham Court home. Macareno's then-fiancé, defendant Daniel Mendoza, assisted with the rehabilitation. Mendoza helped Macareno secure favorable pricing on some construction materials, performed menial job-site tasks "[l]ike a gopher," and supervised some of the workers on the project. Mendoza did not perform substantive labor, did not act as contractor, and was not authorized to make any representations on behalf of Hopevale. Nonetheless, he served as the primary point of contact with at least one of the vendors on the project, defendant Leonel Valencia, who owns a trash-bin rental company. Valencia testified that Mendoza sometimes was the one who paid him when he delivered trash bins to the job site, and that these payments

sometimes were in the form of checks issued by "Mendoza Properties." Valencia believed that Mendoza was a supervisor at the job site and that Mendoza and Macareno were business partners who bought the Sandringham Court home together.

In October 2010, Hopevale sold the Sandringham Court home to Candelaria for $800,000, its appraised value as of August 28, 2010. Candelaria, who has only a tenth-grade education and allows Macareno to handle all of her financial affairs, viewed the Sandringham Court home as "a long term investment" and a "tax deduction." Candelaria took title to the Sandringham Court home in her own name, but allowed Macareno, Mendoza, Macareno's daughter, and her own son, Erik, to live at the residence.

Hopevale purchased a home on Telfair Avenue in Los Angeles for $100,000 on August 8, 2010. After investing several thousand dollars and about one month of work into the Telfair Avenue home, Hopevale sold it to Valencia for the "wholesale" price of $185,000. Valencia testified that Mendoza was involved with the Telfair Avenue home transaction; he stated that "Pauline and Daniel offered me the Telfair." Valencia resold the Telfair Avenue home for $260,000 in December 2010, realizing a profit of about $20,000.

In the wake of his successful "flip," Valencia continued transacting business with Mendoza and Macareno. On November 12, 2010, he provided Mendoza with a $20,000 cashier's check payable to Mendoza Properties. On December 29, 2010, Valencia gave Mendoza a second cashier's check, in the amount of $117,000, payable to Mendoza Property. Mendoza prepared a "Note and Promise to Pay" in conjunction with the latter check. The note referenced property at 6917 Alcove Avenue, North Hollywood, and by its terms obligated Mendoza to repay $140,000 plus net profits from the sale of the Alcove Avenue property. The note further stated that the profits from the sale of the Alcove Avenue property would be split between Hopevale and LV Trucking, Inc., Valencia's trash-bin company. The note was scheduled to mature on "Friday, May 27th, 2011, which is a 6-month period for property to be listed and sold in a Real Estate Transaction." Both Mendoza and Valencia signed the note. Macareno had no knowledge

of the note or the loans it inartfully purported to secure.  And, of course, Mendoza had no authority to pledge Hopevale's profits.

More problematically, Mendoza did not have–and never would have–any interest in the property located at 6917 Alcove Avenue.  As of the dates of the two cashier's checks and the promissory note, *none* of the players in this case had any interest in the Alcove Avenue property.  Hopevale eventually purchased the property, but did not close the sale until March 1, 2011.  It financed the $280,000 purchase price with a $230,000 mortgage loan secured by a deed of trust on the property and an additional $55,000 unsecured contribution from Valencia.  Macareno was aware of Valencia's $55,000 contribution, which he had negotiated with Hopevale; she and Valencia both intended the money to be used as a down payment for the purchase of the Alcove Avenue property.  Valencia's $55,000 cashier's check, which was made payable to and deposited directly with the escrow agent, included the subject line "RE:  MENDOZA."

The Alcove Avenue home had not been resold by May 27, 2011, the maturity date of the note Mendoza issued to Valencia.  Valencia initially was not disappointed that Mendoza did not timely repay him as promised, "because we had already done business before and everything had turned out fine so [he] thought [they] were just going to continue on."  Valencia became concerned, however, when he learned around the same time that Macareno and Mendoza "were no longer together" and "started worrying because [he] had nothing in his hands that would ensure [him]."  Valencia tried to speak to Mendoza and Macareno jointly, but he "could never get them together."  He only managed to talk to Mendoza, who promised to pay Valencia but never explained how he planned to do so.

At some point in late June or early July 2011, Valencia contacted Macareno and asked for a deed of trust in the Alcove Avenue home.  Based on her understanding that Valencia had contributed only $55,000 to the project, Macareno called Rose Lucero, an escrow agent and notary public with whom she had worked in the past, and asked her to prepare a deed of trust in the Alcove Avenue home for that amount.  Lucero prepared the

4

document, dated July 8, 2011, and Macareno executed it on July 13, 2011. Macareno left a copy of the deed of trust for Valencia to pick up.

When Valencia retrieved the deed of trust, he informed Macareno that it was incorrect as to the amount and terms he had been promised. Valencia told Macareno that he had been promised more by Mendoza. Valencia did not show Macareno any documentation to back up his claim that he gave Mendoza "a lot more money than this, than $55,000," however. Macareno told Valencia to take up his concerns with Mendoza, with whom she was no longer speaking.

Valencia spoke to Mendoza, who assured him that the remaining debt could be secured by a deed of trust on another property that Mendoza owned: the Sandringham Court home. Although Candelaria originally took title to the Sandringham Court home in her own name, she had transferred a one-half interest to Mendoza by grant deed on June 21, 2011. Candelaria testified that she was unaware the document she signed before notary Lucero on June 21, 2011, was a grant deed that gave Mendoza one-half interest in her property; she did not read the document and thought it was a note representing a $90,000 debt Mendoza was owed for his work on the Sandringham Court home.[1] Mendoza told Candelaria that "he was owed some money from [Macareno], and that it was a $90,000 amount, and that he had spoken to [Macareno] in regards to the money being owed to him and for [Candelaria] to go ahead and get a note signed for him to get reimbursed." Candelaria called Macareno to tell her about the arrangement, but Macareno was on vacation and Candelaria did not hear back from her. Mendoza did not explain–and Candelaria did not understand, even though she knew that he had no interest in Hopevale–that in fact he was owed nothing and that she was transferring a one-half

---

[1] Macareno testified that when her relationship with Mendoza ended in May 2011, "he felt that since he helped me with the development [of the Sandringham Court home] that he should be entitled to some kind of monies for his efforts." According to Macareno, Mendoza claimed an $80,000 interest in the property "because he helped [her] with the dealings of the subcontractors, with the dealings of that. He didn't want to walk away empty-handed." No objections were made to this hearsay testimony.

interest in the Sandringham Court home to him. Notary Lucero, who witnessed the execution of the grant deed, testified that Candelaria voluntarily signed the document without asking any questions. The grant deed was recorded on June 22, 2011. Another witness, a friend of Mendoza's, testified that Mendoza later bragged to him about tricking Candelaria into giving him a one-half interest in her property.

Mendoza showed the Sandringham Court grant deed to Valencia. Valencia, who testified at trial through a Spanish interpreter, believed that the grant deed was legitimate. Mendoza then prepared a deed of trust giving Valencia a $160,000 lien on "his" interest in the Sandringham Court property. Valencia "trust[ed] the papers" Mendoza prepared, even though he no longer trusted Mendoza personally, because he and Mendoza were in front of a notary public (Lucero) and Mendoza had signed them. Valencia thus accepted the deed of trust executed on July 13, 2011 as security for the $160,000[2] Mendoza still owed him. Lucero, who witnessed the signing of all the pertinent documents in this case, testified that Mendoza asked her to prepare several deeds of trust to settle his debt with Valencia, but that several of the documents he requested she prepare and notarize were invalid because Mendoza had no interest in the properties he was seeking to encumber. Lucero testified that she advised Mendoza of the invalid nature of these documents. Lucero did not recall personally preparing the deed of trust encumbering the Sandringham Court home or advising Valencia that it was invalid.

Macareno did not learn that Candelaria had given Mendoza a one-half interest in the property until Candelaria received a notice from the tax assessor's office in August 2011. Candelaria did not discuss the matter with Macareno upon the latter's return from vacation because Candelaria "assumed that she knew everything was okay." Macareno

---

[2]     The origin of the $160,000 figure is unclear, as the cashier's checks totaled $137,000 and the "Note and Promise to Pay" did not state that Valencia was entitled to $160,000. Nonetheless, the deed of trust that Mendoza gave Valencia securitized "the principal sum of $160,000," both Candelaria and Valencia specifically requested relief in that amount during their closing arguments, and the trial court's judgment suggests that it credited the $160,000 figure.

"almost had a heart attack" when she opened the envelope and saw that her mother had conveyed a one-half interest in the Sandringham Court home to Mendoza. Candelaria was "bewildered" by Macareno's reaction because Mendoza had told Candelaria that Macareno had wanted her to sign the document. Candelaria trusted Mendoza because "he was going to be [her] son-in-law." Macareno had not informed her mother of her break-up with Mendoza or her concerns about his honesty. Candelaria similarly made no efforts to inform herself what was going on between Macareno and Mendoza because she "didn't really want to know or get involved with their relationship." Candelaria was "not totally sure" when Mendoza moved out of the Sandringham Court home but thought it might have been in May 2011.

The Alcove Avenue home sold several months later, in January 2012. Valencia recovered his $55,000 contribution, with interest, when the sale closed, pursuant to the deed of trust Macareno issued him. Mendoza never repaid Valencia for the other two cashier's checks.

## PROCEDURAL HISTORY

Candelaria filed a three-count verified complaint against Mendoza and Valencia on October 11, 2011. She alleged that Mendoza and Valencia defrauded her. In addition to compensatory and punitive damages for the alleged fraud, Candelaria sought declaratory relief and requested that the court quiet title on the Sandringham Court home as of June 21, 2011. Mendoza, appearing in propia persona, filed a verified cross-complaint against Candelaria, Macareno, Hopevale, and other business entities allegedly owned by Macareno. Valencia also filed a cross-complaint against Mendoza, alleging breach of contract. Valencia amended his cross-complaint to add a fraud count against Mendoza, and later amended it again to add a claim against Candelaria to establish and enforce an equitable mortgage against the Sandringham Court home.

The clerk entered default against Mendoza at Valencia's request on November 19, 2012. The trial court dismissed Mendoza's cross-complaint in its entirety without

7

prejudice on February 21, 2013, after he failed to appear "for the second consecutive appearance." Candelaria and Valencia proceeded to a two-day bench trial on the remaining claims and cross-claims on February 26, 2013. The court asked the parties to focus their closing arguments on "specifically what are you requesting in regards to damages."

Candelaria clarified that she sought: (1) to quiet title to the Sandringham Court home "against the Mendoza Grant Deed . . . as of June 21, 2011, and that the Deed be declared void"; (2) to quiet title to the Sandringham Court home "against the Valencia Deed . . . as of June 21, 2011, and that the Deed of Trust be declared void and set aside"; (3) declarations that she is the sole owner of the Sandringham Court home and that all other liens on the home are invalid; and, "if Mr. Valencia prevails" or "if the court finds against the plaintiff on the quiet title," (4) damages of $160,000 against Mendoza. Candelaria explained that her alternative request for damages was intended to "guard[ ] against the reality that the court may grant Mr. Valencia relief under his cross-complaint on some theory in which case we want a money damage back against him," and clarified that no damages would be necessary if she prevailed on the quiet title counts "because then she won't be damaged."

Valencia explained that the relief he sought was "an enforceable right of one half interest in the property through a foreclosure proceeding." He also informed the court that he wanted "a judgment against Mendoza for fraud for the $160,000 that he misrepresented."

The parties did not request a statement of decision from the trial court. (See Code Civ. Proc., § 632.) The trial court accordingly provided the parties only with a two-page order outlining its decision.

In that March 6, 2013, order, the trial court found "that the key perpetrator in this matter is Daniel Mendoza based on his fraud and deceit of the plaintiff and the cross-complainant." The trial court "also [found] that the plaintiff/cross-defendant, Margie Candelaria, as well as the defendant/cross-complainant, Leonel Valencia, are both

8

partially responsible for the subject dispute." "[B]ecause it is analytically the most logical to do so," the trial court addressed Valencia's cross-claims first. The court proceeded to explain that it found for Valencia and against Mendoza on Valencia's first three causes of action, and awarded him total damages of $120,000. The court also found for Valencia and against Candelaria on his equitable mortgage claim, in the amount of $40,000. The court stated that "Valencia can perfect his lien against the subject Sandringham property as lien holder, holding a second Deed of Trust, in the amount of $40,000." On Candelaria's claims, the court found for Candelaria and against Mendoza and Valencia. Specifically, the court awarded Candelaria $40,000 in damages against Mendoza, and quiet title as to both Mendoza and Valencia on the condition that Candelaria "first pays the $40,000 to cross-complainant Valencia (as per the Judgment on the cross-complaint)." The court further awarded Candelaria the declaratory relief she requested, also on the condition that Candelaria pay $40,000 to Valencia. The court ordered the parties to meet and confer to prepare a proposed judgment "consistent with, and reflective of," its order.

The parties were unable to agree on a proposed judgment. Eventually, Valencia filed a motion to enter judgment and attached a draft proposed judgment for the court's signature. In Candelaria's brief opposing the motion, she called the court's attention to Civil Code, section 3543,[3] a maxim of jurisprudence that provides, "Where one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer." She argued that, in accordance with section 3543, Valencia "is estopped and barred by his agreeing to loan Mendoza $137,000 . . . without any security, and he cannot recover from Candelaria, an innocent party who was also deceived by Mendoza, because the loss must be borne by Valencia whose negligence or misplaced confidence enabled the injury to occur." Candelaria further disputed the trial court's

---

[3]    All further statutory references are to the Civil Code unless otherwise indicated.

9

conclusion that Valencia was entitled to receive a second deed of trust on the Sandringham Court property and "recover a $40,000 portion of his loss caused by his trust in Mendoza from Candelaria." Valencia responded that the "facts do not support her position," in that Candelaria was negligent by signing the grant deed giving Mendoza a one-half interest in the Sandringham Court home. He further contended that he acted in good faith and accordingly should be considered a "bona fide purchaser or encumbrancer."

The trial court held a hearing on Valencia's motion for entry of judgment on September 16, 2013. Candelaria did not attend the hearing[4], and we have been provided only with the resultant motion ruling and judgment, no transcript. The trial court granted in part and denied in part Valencia's motion and entered the following judgment, consistent with its earlier order:

"1.    Judgment for Plaintiff Margie M. Candelaria on her complaint as against Defendant Daniel A. Mendoza, and Plaintiff Margie M. Candelaria shall have and recover from Defendant Daniel A. Mendoza the amount of Forty Thousand dollars ($40,000.00), and costs of suit pursuant to a timely filed Memorandum of Costs. The Court quiets title as of June 21, 2011 in favor of Plaintiff Margie M. Candelaria on the real property commonly known as 18223 Sandringham Court, Los Angeles, California, 91326 . . . (hereinafter 'Property') against the Grant Deed recorded on June 22, 2011. . . in favor of Defendant Daniel A. Mendoza, and that Grand [*sic*] Deed is declared void;

"2.    Judgment for Plaintiff Margie M. Candelaria on her complaint as against Defendant Leonel Valencia, in that the Court quiets title on the property as of June 21, 2011 against the Short Form Deed of Trust and Assignment of Rents recorded on July 19, 2011 . . . in favor of Leonel Valencia, and that Short Form of Deed of Trust And

---

[4]    The record indicates that Candelaria's attorney had to attend to another matter before a different court, and the attorney he enlisted to cover the hearing unexpectedly fell ill, slept through his alarm clock, and did not wake up until Candelaria's attorney telephoned him to ask where he was.

Assignment of Rents is declared void. Otherwise, the Plaintiff Margie M. Candelaria is to recover no money against Defendant Leonel Valencia;

"3.    Judgment for Cross-Complainant Leonel Valencia on his Second Amended Cross-Complaint as against Defendant Daniel A. Mendoza in the amount of One Hundred and Twenty Thousand dollars ($120,000.00) and costs of suit pursuant to a timely filed Memorandum of Costs; and

"4.    The Court further grants Judgment on the Cross-Complaint of Leonel Valencia and against Margie M. Candelaria on the Fourth Cause of Action to 'Establish and Enforce Equitable Mortgage' in the amount of $40,000.00 and to perfect his lien against the subject property as a lien holder, holding a Second Deed of Trust, in the amount of $40,000.00.

"Once the Plaintiff/Cross-Defendant Margie M. Candelaria first pays the $40,000.00 to Cross-Complainant Leonel Valencia (as per the Judgment on the Cross-Complaint), the Court then declares as follows:

"a.    Court quiets title on the Property against the Mendoza Grant Deed as of June 21, 2011, and that Deed will be declared void;

"b.    Court quiets title on the Property against the Valencia Deed of Trust recorded July 19, 2011 . . . , and that Second Deed of Trust will then be declared void and set aside;

"c.    Candelaria is the sole owner of the Sandringham property, and the Mendoza Grant Deed is set aside and is not a lien against Sandringham property; and

"d.    The Valencia Deed is not a valid lien on the Sandringham property and is to be set aside."

Candelaria timely filed a notice of appeal on November 14, 2013. She requests that we "modify the Judgment by striking that portion that awards Valencia a second deed of trust for $40,000, and in all other respects affirm the Judgment."

11

**DISCUSSION**

**A.     Standard of Review**

As a general rule, "[t]he substantial evidence standard of review is applicable to appeals from both jury and nonjury trials." (*Jameson v. Five Feet Restaurant, Inc.* (2003) 107 Cal.App.4th 138, 143.)  Under that standard, "we resolve any conflict in the evidence and reasonable inferences to be drawn from the facts in support of the determination of the trial court." (*Citizens Business Bank v. Gevorgian* (2013) 218 Cal.App.4th 602, 613.) Where, as here, no statement of decision is requested or rendered, we "imply all findings necessary to support the judgment, so long as those findings are supported by substantial evidence." (*McLaughlin v. Walnut Properties, Inc.* (2004) 119 Cal.App.4th 293, 302.)

The portion of the judgment that Candelaria challenges, however, is the trial court's award to Valencia of a $40,000 equitable mortgage in the Sandringham Court property.  "An equitable decree is reviewed under the abuse of discretion standard, under which 'we resolve all evidentiary conflicts in favor of the judgment and determine whether the court's decision "'falls within the permissible range of options set by the legal criteria.'"'" (*In re Estates of Collins & Flowers* (2012) 205 Cal.App.4th 1238, 1246; see also *Tampico v. Wood* (1963) 222 Cal.App.2d 211, 215 (*Tampico*); cf. *Scottsdale Insurance Co. v. Century Surety Co.* (2010) 182 Cal.App.4th 1023, 1032-1033 [court's allocation of liability in equitable contribution action reviewed for abuse of discretion].)  Trial courts sitting in equity have broad discretion to fashion relief (*In re Estates of Collins & Flowers*, *supra*, 205 Cal.App.4th at p. 1246), and an abuse of discretion occurs only when, "in light of applicable law and considering all relevant circumstances, the court's ruling exceeds the bounds of reason." (*Jhaveri v. Teitelbaum* (2009) 176 Cal.App.4th 740, 749.)

Both parties assert that the substantial evidence standard of review should be applied here.  To the extent that Candelaria is challenging the trial court's apparent

12

rejection of her section 3543 argument,[5] we agree. "Estoppel based upon Civil Code section 3543 is factually established and appellate review is limited to a determination of whether substantial evidence supports the finding: 'Whether or not plaintiffs or defendants were negligent, . . . and whether or not section 3543 of the Civil Code is applicable, are [each] questions of fact.'" (*Wurzl v. Holloway* (1996) 46 Cal.App.4th 1740, 1753-1754 [quoting *Keegan v. Kaufman Bros.* (1945) 68 Cal.App.2d 197, 200].) However, to the extent that she is challenging the trial court's decision to grant an equitable mortgage or the court's exercise of its equitable discretion in fashioning a remedy, we apply the abuse of discretion standard.

**B.     Analysis**

The main "premise of Candelaria's appeal" is that section 3543 requires modification–really, reversal–of the trial court's judgment that Valencia is entitled to a $40,000 second deed of trust on the Sandringham Court home. She argues that "[s]ubstantial evidence compels the conclusion that, as between Valencia and Candelaria, Valencia was principally responsible for causing his loss in November/December when he misplaced his confidence in Mendoza" by providing Mendoza with unsecured loans. Since her own conceded "negligence in deeding title to Sandringham to Mendoza and herself *six months later* was not a cause of, or factor in, Valencia's loss," Candelaria contends she should not bear any responsibility for rectifying that loss.

We have described section 3543 as "basically an estoppel theory, addressing comparative fault between two innocent victims." (*Wurzl, supra,* 46 Cal.App.4th at p. 1752.) "It is based upon misplaced confidence by one victim resulting in victimization of the other." (*Ibid.*) Here, the trial court expressly found that both Candelaria and Valencia were "partially responsible for the subject dispute." Substantial evidence supports this finding. Candelaria took Mendoza's representations at face value despite

---

[5]     Without the benefit of a statement of decision or transcript of the hearing at which the motion to enter judgment was presented, we are not able to ascertain whether the trial court accepted, rejected, or even considered Candelaria's arguments concerning section 3543.

her knowledge that he had no interest in Hopevale and no longer lived with Macareno, failed to read the grant deed before signing it, and made no inquiry into the transaction beyond leaving a voicemail message for Macareno (and proceeding without receiving a call back). Valencia loaned $137,000 to Mendoza without confirming that Mendoza had an interest in Hopevale or the Alcove Avenue home, and without obtaining a security interest in any of Mendoza's property.

In other words, both Candelaria and Valencia erroneously placed their confidence in Mendoza. "Misplaced confidence has been held to be negligence within section 3543." (*Reusche v. California Pacific Title Insurance Co.* (1965) 231 Cal.App.2d 731, 738 (*Reusche*).) Thus, both Candelaria and Valencia were negligent for purposes of section 3543, which provides guidance for situations in which "one of two innocent persons must suffer by the act of a third." The trial court's factual finding of mutual culpability distinguishes the instant case from those cited by Candelaria. For example, in *Tampico*, the court expressly noted that it did not appear from the record "that the [defendants] were in any way negligent in failing to discover" the fraud perpetrated on both plaintiffs and defendants. (*Tampico*, *supra*, 222 Cal.App.2d at p. 216.) Likewise, one of the parties in *Reusche* knowingly approved a forged check, while the other was entirely innocent. (See *Reusche*, *supra*, 231 Cal.App.2d at pp. 738-739; see also *Wutzke v. Bill Reid Painting Service, Inc.* (1984) 151 Cal.App.3d 36, 39 ["At the conclusion of trial, the court found both Wuzke and Reid were 'innocent parties' and that neither had been negligent in their dealings with the Millers."].)

Candelaria argues that she nonetheless is comparatively innocent, as Valencia was the first to fall victim to Mendoza's fraudulent ways and therefore "set in motion the chain of events resulting in his own loss when Mendoza's representations regarding repayment from the sale of Alcove proved false." This position has some support in the case law, as courts have invoked section 3543 as a basis for allocating loss to the party who "initiated the chain of events leading up to the loss," or the one who vested in the wrongdoer the power to perpetrate a fraud. (*Tampico*, *supra*, 222 Cal.App.2d at p. 215.)

14

We do not find it particularly persuasive here, however, as the trial court found that Candelaria was partially responsible. (Cf. *In re Estates of Collins & Flowers*, *supra*, 205 Cal.App.4th at p. 1247 [noting that section 3543 and the unclean hands doctrine are "entwined theories"].) Both she and Valencia vested in wrongdoer Mendoza the power to perpetrate a fraud. Valencia's and Candelaria's independent negligence in dealing with Mendoza set in motion two separate chains of events that happened to intersect at Sandringham Court. To the extent that Candelaria may have been less negligent than Valencia, it appears that the trial court took this into account in fashioning the parties' respective remedies.

Though unconventional, the trial court's judgment appears to be an attempt to "approach the status quo as nearly as possible" (*Tampico*, *supra*, 222 Cal.App.2d at p. 215) while apportioning the loss in accordance with the parties' respective negligence. We find the award to be a permissible exercise of the trial court's discretion. When the dust settled on the convoluted facts of this case, Valencia was out $160,000, Candelaria was out an interest in her property worth approximately $400,000, and Mendoza was out of the picture. The trial court's award allows the more culpable Valencia to recover only one quarter of his loss immediately and requires him to seek the sizeable remainder from Mendoza, who may never be found and may well be judgment-proof if he is. Candelaria, on the other hand, must immediately suffer the pain of transferring $40,000 to Valencia, but this amounts to only 10 percent of her loss–and she has been awarded a judgment in that very amount against Mendoza, an offset that she proposed during closing argument. Moreover, she is certain to receive all of the nonmonetary relief she requested. In the end, she will be much closer to the status quo than Valencia, though both will be made entirely whole if they are able to collect their judgments against Mendoza. Although we may have crafted the parties' awards differently, the trial court's judgment is not outside the bounds of reason, given the unusual circumstances of this complicated case.

The same is true of the court's decision to grant Valencia a temporary equitable mortgage in the Sandringham Court property. "In general, equity will create a lien on

15

property where this is necessary to accomplish substantial justice and protect creditors." (*Grappo v. Coventry Financial Corp.* (1991) 235 Cal.App.3d 496, 509.) Here, the court acted within its discretion in concluding that substantial justice would be served by the imposition of a small and temporary equitable lien on the Sandringham Court property. Valencia had little reason to doubt the validity of Mendoza's interest in the Sandringham Court home, which was evidenced by a notarized and recorded grant deed. Valencia plainly intended to "make real property security for an obligation" (*ibid.*), which is one of the several typical situations in which courts often construe equitable liens, and the lien here is well within the interest that Candelaria negligently deeded to Mendoza. Candelaria is not "burdened further with a judicially constructed lien" the burden her own negligence placed on the property is considerably reduced and will be eliminated completely if Mendoza is located.

## DISPOSITION

The judgment is affirmed. Respondent is awarded costs on appeal.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

COLLINS, J.

We concur:

EPSTEIN, P. J.

MANELLA, J.

16