Filed 8/2/16  P. v. Wilson CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JAMES ANTHONY WILSON,<br><br>Defendant and Appellant. | B269527<br><br>(Los Angeles County<br>Super. Ct. No. TA136190) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Laura R. Walton, Judge.  Affirmed.

Lenore De Vita, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr., and Amanda V. Lopez, Deputy Attorneys General, for Plaintiff and Respondent.

_____

James Anthony Wilson (Wilson) was charged with possession for sale of cocaine base (Health & Saf. Code, § 11351.5; count 1), possession of a firearm by a felon (Pen. Code, § 29800, subd. (a)(1); count 2),[1] bringing contraband into jail (§ 4573, subd. (a); count 3), carrying a loaded firearm while having suffered a prior conviction (§ 25850, subd. (a); count 4), and possessing a concealed firearm in a vehicle (§ 25400, subd. (a)(1); count 5). The felony complaint alleged that Wilson committed all offenses while he was released on bail (§ 12022.1). As to count 1, it was further alleged that Wilson was personally armed with a firearm for purposes of section 12022, subdivision (c). With respect to counts 1, 2, 4, and 5, the felony complaint alleged that Wilson committed the offenses for the benefit of, at the direction of, and in association with a criminal street gang with the specific intent to promote, further, and assist in criminal conduct by gang members (§ 186.22, subd. (b)(1)(A)).

After a magistrate denied Wilson's motion to suppress all evidence obtained from a warrantless stop, detention and arrest, he pleaded guilty to all counts, and admitted all allegations. The trial court struck the section 667.5, subdivision (b) allegation in the interest of justice. Wilson was sentenced to an aggregate prison term of eight years.

On appeal, Wilson contends that the magistrate erred when she denied his motion to suppress evidence. Alternatively, if the issue was waived because defense counsel did not renew the motion to suppress before the trial court, Wilson contends that he received ineffective assistance of counsel. We conclude that Wilson waived his challenge to the denial of his suppression motion because defense counsel did not renew it before the trial court or move to dismiss under section 995, and we conclude that Wilson was not prejudiced by defense counsel's performance.

We affirm.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

FACTS

**The Preliminary Hearing**

Previous to his arrest in this case, Wilson admitted to police officers that he is a member of the 87 Gangster Crips. He also admitted that his moniker is Blackjack or BJ. Consistent with other members of the 87 Gangster Crips, he has the numbers 8 and 7 on his left and right arm respectively, and the letters G and C on his left and right arm, respectively. When the 87 Gangster Crips are in possession of weapons, it is primarily pistols.

On the night of December 30, 2014, Officer Gilberto Gaxiola was in a patrol car in the area of 86th Place and Main Street, a "known gang problem location as well as a known narcotic area location." It was within the territory of the 87 Gangster Crips, a gang which sold rock cocaine and marijuana, and which engaged in robberies, shootings and murders.

As he and his partner were driving, Officer Gaxiola detected the odor of marijuana emanating from a parked car. As a result, the officers pulled over and got out to investigate. Officer Gaxiola approached the car and saw Wilson in the passenger seat with an open alcohol container in his lap. The driver—a woman—had a marijuana cigarette.

One of Officer Gaxiola's partners, Officer Reyes, recognized Wilson from previous contacts and arrests.[2] Also, he recognized Wilson's car, which was parked behind the car Wilson was sitting in.

After Officer Reyes ordered Wilson and the driver to exit the car, the officers searched Wilson and recovered a baggie of marijuana and $425 in cash from his front pocket. When Officer Reyes asked Wilson if the officers could search his car, he stated that he had a loaded firearm and narcotics in a backpack that was inside of his car. The

---

[2]      Officer Gaxiola had a second partner, Officer Oviatt. Though not clear from the record, Officer Oviatt was presumably present. The prosecutor, as an offer of proof, said that Officer Gaxiola heard from Officer Reyes that he had arrested Wilson for the same charges alleged in the current case. The trial court sustained defense counsel's objection to the proffered evidence as irrelevant.

officers searched Wilson's car and recovered a scale, a loaded .44 caliber semiautomatic handgun, and 16 individually-wrapped, off-white solid substances resembling rock cocaine, all of which was inside a backpack in the front passenger seat.

Wilson was arrested. Once he was booked into custody, he said he had a baggie of cocaine. A baggie was recovered from his sock. For purposes of the preliminary hearing, Wilson stipulated that the substances found in his possession contained cocaine and cocaine base.

**Motion to Suppress**

Wilson moved to suppress the evidence obtained from the search. The magistrate denied the motion. As justification, the magistrate commented that the officers smelled marijuana and saw an open container in Wilson's lap, so there were two infractions that permitted the officers to conduct an investigation that was reasonable in duration and scope. The pivotal question was whether the officers had a lawful reason to pat Wilson down for weapons. In the magistrate's view, the pat down search was permitted because Wilson was a known gang member, and the stop occurred at night in a gang area known for narcotics sales. The search of the car was lawful because Wilson gave his consent.

## DISCUSSION

**I. The Magistrate's Ruling is Not Subject to Review.**

Case law establishes that "[i]n order to obtain direct appellate review of a magistrate's denial of a motion to suppress evidence under section 1538.5 at the preliminary hearing, a defendant must either renew the motion in the trial court or challenge the legality of the search in a motion to dismiss under section 995." (*People v. Hawkins* (2012) 211 Cal.App.4th 194, 199–200, fns. omitted.)

Because Wilson did not renew his motion to suppress, or challenge the legality of the search in a motion to dismiss under section 995, he did not preserve his appellate challenge to the magistrate's ruling.

**II. Ineffective Assistance of Counsel.**

Wilson argues that he received ineffective assistance of counsel. We could deem this argument waived because it is raised for the first time in a reply brief. (*Wurzl v.*

4

*Holloway* (1996) 46 Cal.App.4th 1740, 1754–1755, fn. 1.)  Rather than put this issue off to another day, we have opted to reach the merits.

To demonstrate ineffective assistance of counsel, a defendant must show that counsel's performance was deficient, and that defendant suffered prejudice.  (*People v. Vines* (2011) 51 Cal.4th 830, 875.)

Wilson argues that if defense counsel had reasserted a challenge to the search and seizure, it is likely the evidence would have been suppressed because:  the pat-down search should not have been upheld because Officer Gaxiola never articulated a basis for it; the pat-down search exceeded its necessary scope; and Wilson's consent to the search of his car was not knowing or voluntary.  Assuming without deciding that defense counsel's performance was deficient, Wilson was not prejudiced by that performance.  In other words, it is not reasonably probable that Wilson would have received a more favorable outcome in the absence of defense's counsel's alleged failings.  (*People v. Nilsson* (2015) 242 Cal.App.4th 1, 27.)

A.  <u>The Pat-Down Search</u>.

The initial question is whether the police lawfully detained Wilson.  Only if he was lawfully detained could he have been subjected to a pat-down search.

An "officer who lacks probable cause to arrest can conduct a brief investigative detention when there is '"some objective manifestation" that criminal activity is afoot and that the person to be stopped is engaged in that activity.' [Citations.]  Because an investigative detention allows the police to ascertain whether suspicious conduct is criminal activity, such a detention 'must be temporary and last no longer than is necessary to effectuate the purpose of the stop.' [Citations.]" (*People v. Celis* (2004) 33 Cal.4th 667, 674; *People v. Hughes* (2002) 27 Cal.4th 287, 327 [police may detain a person if there is an articulable suspicion that he or she has committed or is about to commit a crime]; *People v. Dolly* (2007) 40 Cal.4th 458, 463 ["An investigatory detention of an individual in a vehicle is permissible . . . if supported by reasonable suspicion that the individual has violated the law"].)

5

Officer Gaxiola saw an open alcohol container on Wilson's lap while he was sitting in a vehicle. This was an objective manifestation that Wilson was engaged in criminal activity, i.e., violating Vehicle Code section 23223, subdivision (b). That statute provides that "[n]o passenger shall have in his or her possession, while in a motor vehicle . . . any bottle, can, or other receptacle containing any alcoholic beverage that has been opened or a seal broken, or the contents of which have been partially removed." (Veh. Code, § 23223, subd. (b).) Thus, we easily conclude that the detention was lawful. Wilson does not argue otherwise.[3]

We turn, now, to the pat-down search.

In certain circumstances, a pat-down search for weapons is permissible under *Terry v. Ohio* (1968) 392 U.S. 1 (*Terry*).

In *Terry*, the Supreme Court held that "there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. [Citations.] And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience. [Citation.]" (*Terry*, *supra*, 392 U.S. at p. 27, fn. omitted.) A pat-down search must "be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." (*Id*. at p. 29.)

---

[3]     Wilson argues that there was insufficient evidence that he violated Vehicle Code section 23223, subdivision (b) because the prosecutor never established that Wilson's container held alcohol. But Wilson does not contend this point is relevant to whether the detention was lawful.

If a "protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under *Terry* and its fruits will be suppressed." (*Minnesota v. Dickerson* (1993) 508 U.S. 366, 373 (*Minnesota*).)

Here, the officers smelled the odor of marijuana emanating from a parked vehicle at night in an area known for gang problems and narcotics. Moreover, there is a reasonably deducible inference from the evidence that the officers knew Wilson was a member of the 87 Gangster Crips because the detention occurred in that gang's territory, Officer Reyes had previous contact with Wilson (including arrests), and Wilson was known to the police as a gang member. In our view, the officers had reason to believe they were contacting a member of a gang that sold drugs and engaged in violent crimes, and whose members were often armed with pistols.

As explained in *People v. Limon* (1993) 17 Cal.App.4th 524, 535, it is """"not unreasonable to assume that a dealer in narcotics might be armed[.]"""" Moreover, when coupled with other factors, the fact that an area "'involved increased gang activity may be considered if it is relevant to an officer's belief the detainee is armed and dangerous.'" (*In re Frank V.* (1991) 233 Cal.App.3d 1232, 1241.) Based on the foregoing, we conclude that the pat-down search was lawful.

While it is true, as Wilson points out, that Officer Gaxiola never articulated a basis for the pat-down search, we cannot accept Wilson's argument that the search was therefore based on an inchoate and unparticularized suspicion or hunch. Given the time, location and circumstances of the detention, any reasonable officer in Officer Gaxiola's shoes would have believed his safety, and that of his partners, was at risk. Consequently, Wilson has not demonstrated that he was prejudiced by defense counsel's failure to renew a Fourth Amendment challenge, at least with respect to whether the officers had authority to conduct a pat-down search.

The next issue is whether the pat-down search exceeded its scope. The answer is no. As established by Officer Gaxiola's testimony, the police searched Wilson's front pocket and found marijuana as well as money. Because a front pocket is a logical place

to find a concealed weapon, the search of Wilson's front pocket was an intrusion reasonably designed to discover weapons.

Officer Gaxiola was not asked what he felt during the pat-down search. Inferably, he felt something that resembled drugs. Significantly, this was during a search of a known member of a gang that sells drugs. (*People v. Dibb* (1995) 37 Cal.App.4th 832, 836–837 ["[t]he critical question is not whether [the officer] could identify the object as contraband based on only the 'plain feel' of the object, but whether the totality of the circumstances made it immediately apparent to [the officer] when he first felt the lump that the object was contraband"].) We note that "[i]f a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity [as contraband] immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons . . . ." (*Minnesota*, *supra*, 508 U.S. at p. 375.) In that situation, the contraband can be seized without a violation of the Fourth Amendment. (*Id*. at pp. 375–376). Thus, if defense counsel had renewed his challenge, it is not reasonably probable that Wilson would have prevailed.

B. The Search Of Wilson's Car.

Wilson contends that the search of his car was unlawful because his consent was neither knowing nor voluntary.

A warrantless search is lawful if it is consensual. (*Florida v. Jimeno* (1991) 500 U.S. 248, 250–251.) "Where, as here, the prosecution relies on consent to justify a warrantless search or seizure, it bears the 'burden of proving that the defendant's manifestation of consent was the product of his free will and not a mere submission to an express or implied assertion of authority. [Citation.]' [Citation.]" (*People v. Zamudio* (2008) 43 Cal.4th 327, 341.) "[T]he question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." (*Schneckloth v. Bustamonte* (1973) 412 U.S. 218, 227.)

According to the testimony at the preliminary hearing, the officers asked Wilson if they could search his car, and he informed them that it contained a gun and drugs inside

of a backpack.  This was consent.[4]  Moreover, there was no evidence of coercion.  We conclude that under the totality of the circumstances, Wilson's consent was a product of free will.  In doing so, we reject Wilson's argument that we should be suspicious and skeptical as to why Wilson would voluntarily tell the police he had cocaine and a gun in his car and then give them permission to search.  Given that Wilson had been arrested, and it was apparent that the officers had identified his car and might impound it, it was reasonable for Wilson to be cooperative.  These considerations lead us to conclude that the search of Wilson's car was lawful.

Even if the search was not lawful, it is not likely the evidence would have been suppressed by the trial court.  After Wilson said there was a gun and drugs in his car, and after he was arrested, the officers would have impounded the car because that would have been necessary to protect the community from the car's ostensible contents, and the guns and drugs would have been found during an inventory search.  (*People v. Torres* (2010) 188 Cal.App.4th 775, 787–788.)

All other issues are moot.

### DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
ASHMANN-GERST

We concur:


_____, P. J.          _____, J.
      BOREN                                             CHAVEZ

---

[4]     Even though he did not expressly consent, Wilson's statement strongly implied consent.  Because "there is no talismanic phrase which must be uttered by a suspect in order to authorize a search" (*People v. James* (1977) 19 Cal.3d 99, 113), the trial court was on solid footing when it determined that consent had been given.  On this point, there is no dispute from Wilson.